WARD and others *against* THE GRISWOLDVILLE MANUFAC-
TURING COMPANY, (*a*)

The act incorporating a manufacturing company provided, that the capital stock of the corporation should not exceed 50,000 dollars; that a share of the stock should be 100 dollars; that the directors might call in the subscriptions to the capital stock by instalments, in such proportions, and at such times and places, as they should think proper; that the stock, property and affairs of the corporation should be managed by the directors, who were required to be stockholders; and that they should have power to establish such rules and regulations as they should think expedient. The act also provided in effect, that within three months, not less than 5000 dollars of the capital stock should be actually paid, which should not be withdrawn so as to reduce the same below 5000 dollars. After the stockholders had paid in 40 *per cent.* on their subscriptions, the corporation became insolvent, having no visible property. On a bill in chancery, brought by certain creditors, for the benefit of all, against the stockholders, praying that they might be compelled to pay in the remaining 60 *per cent.* (or so much thereof as should be necessary) to be applied in payment of the debts of the corporation, it was held, 1. that the obligation which the stockholders assumed, by their subscription to the capital stock of the corporation, was to pay the sum of 100 dollars, on each share, in such instalments and at such times, as should be required by the directors; 2. that the amount of the shares subscribed, and not the sum actually paid in, constituted the capital stock of the corporation; 3. that when further instalments became necessary to meet the debts of the corporation, it was the duty of the directors to cause them to be made, the discretionary power of the directors being modal only, relating to the time and manner of payment; 4. that this duty might be enforced, by a decree in chancery; and consequently, that the relief sought should be granted.

(*a*) This case was argued at the stated term, in *July* 1844, but was not decided until the meeting of the Judges in *November* following.

*Hartford,*
*Nov., 1844.*

Ward
*v.*
Griswoldville
Manufacturing
Company.

THIS was a bill in chancery, brought by *Roswell B. Ward* and others, in their own behalf, and in behalf of such other creditors of *the Griswoldville Manufacturing Company* as might elect to become parties to such bill, against *Thomas Griswold* jr. and others, stockholders of that corporation, praying, the court to order and decree, that the defendants pay into the hands of a receiver an instalment of 60 *per cent.* upon their stock, or so much thereof as would be sufficient to pay the debts of the plaintiffs and such other creditors as might elect to come in under the decree, to be applied by said receiver to the discharge of the same, or that the court would require the directors of said corporation to call in such instalment and apply the same to discharge such debts.

The bill stated, that the General Assembly, in *May* 1832, incorporated *Thomas Griswold* and others, by the name of *The Griswoldville Manufacturing Company;* (*b.*) that among other things, the charter of this corporation provided, that its capital stock should not exceed 50,000 dollars, and that a share of said stock should be 100 dollars; and the directors of said corporation were therein authorized to call in the subscriptions to said capital stock by instalments, in such proportions, and at such times and places, as they might think proper: that said corportion was duly organized pursuant to the requirements of its charter, commenced business, buying, manufacturing and selling goods, and has continued such business until the present time: that said corporation being indebted to the plaintiffs, in sundry large sums of money, respectively, the plaintiffs instituted suits therefor, and recovered judgments against said corporation as follows—[specifying the debt and costs in each suit,] amounting to 2032 dollars, 98 cents; upon all which judgments, executions were duly issued, and placed in the hands of *Chester Adams* Esq., sheriff of the county of *Hartford*, to be executed according to law: that said sheriff made demand of said corporation, of the clerk and of the agent, on such executions, of the several sums of money therein mentioned, who neglected and refused to pay such sums, or any part thereof; and said sheriff, upon diligent search, was unable to find any property or

(*b.*) See the charter of this corporation *Priv. Stat.* 801, 2. which, though not fully set forth in the bill, was therein referred to, and was considered and treated, by all concerned, as a part of the case.

effects of said corporation wherewith to satisfy said executions, and thereupon returned them wholly unsatisfied. The bill then mentioned the names of the president, directors, agent and stockholders of said corporation, with the number of shares holden by each, and averred, that the whole number of shares of the capital stock of said corporation subscribed for, was      shares of 100 dollars each; and that only forty *per cent.* has been paid in to said corporation on each of said shares, there being still due from each shareholder to said corporation sixty *per cent.* on each of said shares ; that if said sixty *per cent.* were called for and paid in, said corporation would be able to discharge all its present indebtedness and satisfy said executions in full; that said directors, although they have, for a long time, well known the existence of said debts against the corporation, and although it was their duty, and by their charter they are authorized and empowered, to call in the remaining instalments so due on said shares, to enable the corporation to discharge its indebtedness, have hitherto neglected and refused so to do.

To this bill there was a demurrer ; and the case was reserved for the consideration and advice of this court.

*Toucey* and *Fellowes*, in support of the demurrer, contended, 1. That the plaintiffs have no title in equity. In the first place, it is not enough that they are judgment creditors, and can find no visible property. This gives them no title. *Donovan* v. *Finn* & al. *Hopk. Ch. R.* 59. Nor secondly, would it be enough, even if the charter imposed the obligation on the directors to lay instalments, instead of leaving it, as it does to their *discretion.* Thirdly, if the plaintiffs have title founded on any of the grounds of equitable jurisdiction, it must be that of *trust.* But here is no trust. The property of an existing corporation, solvent or insolvent, in the hands of the corporation, is not a trust fund for the creditors. If it were, the corporation could not employ it in business to make gain, but must hold it exclusively for the payment of debts ; and in making such payments, there could be no preference of one creditor to another. *Catlin* v. *the Eagle Bank,* 6 *Conn. R.* 233. This case establishes the principle, that the effects of an insolvent corporation are no more a trust fund than the effects of an insolvent natural person.

*Hartford,*
Nov., 1844.

Ward
*v.*
Griswoldville
Manufacturing
Company.

*Hartford,*
Nov. 1844.

Ward
*v.*
Griswoldville
Manufacturing
Company.

There is a class of cases in which it has been holden, that the capital stock of a bank dissolved, paid in and then distributed among the stockholders, leaving debts unpaid, was held *in trust* by the stockholders. But those cases are very different from the present. In them, there were only two classes of persons—the stockholders and the creditors—that could claim title; and the question was, who had the superior equity. The capital was not there, as here, in the hands of a corporation, with full powers of disposition.

2. That the instalments unpaid and uncalled for, are no part of the capital stock of the corporation. They are not embarked in its business. The capital paid in, is the only basis of profit and loss. There is at most a mere *liability*, on the part of the stockholders, to hazard more at the discretion of the directors.

3. That if the plaintiffs have any remedy in regard to the instalments in question, it is by *mandamus* or *quo warranto. The Queen* v. *The Victoria Park Company,* 1 *Adol. & El. N. S.* 288. (41 *E. C. L.* 544.) *The Queen* v. *Ledgard* & al. *Id.* 616. (41 *E. C. L.* 697.) Misuser and non-user of corporate franchises, are no ground of equitable jurisdiction. *The Attorney-General* v. *The Utica Insurance Company,* 2 *Johns. Ch. R.* 371. *Verplanck* v. *The Mercantile Bank.* 1 *Edw. Ch. R.* 84. A corporation cannot be compelled to pay its debts, by a bill in equity, whether solvent or insolvent.

*Hungerford* and *T. C. Perkins,* contended, 1. That the *shares subscribed,* and not the sum actually paid in, constituted the capital stock of the corporation. By the charter, the capital stock, limited to 50,000 dollars, is made up of shares of 100 dollars each. When these are subscribed, the stock is created. The charter contains a distinct provision as to the amount to be paid in, within three months and certified—*i. e.* before the company may *commence operations ;* but this does not make the capital stock more or less. Suppose stock notes had been given for the amount of the stock, as is generally done in the case, of insurance companies ; would not these notes be a part of the capital stock ? But a *subscription* for stock is as binding as a promissory note. *The Hartford and New-Haven Rail-road Company* v. *Kennedy,* 12 *Conn. R.* 507.

2. That the capital stock, including the unpaid subscriptions, is a *trust fund* for the payment of the debts of the corporation ; and the refusal of the directors to call them in and apply them, operates as a *fraud* upon the creditors. *Wood* v. *Dummer*, 3 *Mason*, 368. And see the authorities cited *infra*.

<em>Hartford,</em><br>Nov., 1844.<br><br>Ward<br><em>v.</em><br>Griswoldville<br>Manufacturing<br>Company.

3. That a bill in chancery is the proper remedy. *A quo warranto* is not applicable to the case ; and if a *mandamus* would lie, a bill in chancery is a concurrent remedy. Dr. *Salmon* v. *The Hamborough Campany*, 1 *Ca. Chan.* 204. *Slee* v. *Bloom*, 19 *Johns. R.* 484. *Briggs* v. *Penniman*, 8 *Cowen* 387. *Nathan* v. *Whitlock*, 3 *Edw. Ch. R.* 215. S. C. on appeal, 9 *Paige* 152. 2 *Sto. Eq.* 498,9. *s.* 1252.

WAITE, J., the resolve incorporating the *Griswoldville Manufacturing Company*, provides, that " the capital stock of the corporation shall not exceed fifty thousand dollars"— " that a share of the stock shall be one hundred dollars"— " and that the directors may call in the subscriptions to the capital stock, by instalments, in such proportions, and *at such times* and places, as they may think proper, giving such notice thereof as the by-laws and regulations of the company shall prescribe."

There is a further provision, that " the stock, property and affairs of the corporation, shall be managed by not less than three, nor more than five directors, one of whom they shall appoint their president"—and they shall have power " to make and establish such by-laws, rules and regulations, as they shall think expedient, for the better management of the concerns of the corporation, and the same to alter and repeal."

1. The first enquiry, arising in this case, is, what obligation did a stockholder assume upon himself, when he subscribed for a share of the stock of this company ? The answer obviously is, that he agreed to pay the sum of one hundred dollars, in such instalments and at such times, as should be required by the directors. There was no discretion left to him as to the times of payment, nor as to the amount, except that it should not exceed the sum of one hundred dollars. He had indeed a voice in the election of the directors ; but when they were chosen, they were clothed with the power of making by-laws, prescribing the time and manner of paying the instalments upon the shares, and managing the affairs of the

*Hartford,*
*Nov., 1844.*

Ward
*v.*
Griswoldville
Manufacturing
Company.

corporation. Were they now to call in the balances due upon the shares, the stockholders could not successfully resist the demand.

This is not only apparent from the terms of the act of incorporation, but in conformity with principles settled by this court, in a very recent case. *The Hartford and New-Haven Rail Road Company* v. *Kennedy,* 12 *Conn. R.* 507. The defendant in that case had subscribed to the stock of a Rail-Road Company, and an action was brought against him to recover the amount of certain instalments on his shares, ordered by the directors to be paid. The judge who gave the opinion of the court, in that case, says, " Did the defendant, by becoming and continuing a stockholder incur a personal obligation to pay the instalments required by the directors, in the manner prescribed by the charter, on the shares by him originally subscribed, and held by him at the time such instalments were called for and were due ? We think such an obligation was created; and the law coinciding, in this case, with justice and good faith, will enforce it. It is true, a promise to pay, *in precise terms,* does not appear to have been made. The defendant has not affixed his signature to an instrument which contains the words *I promise to pay ;* but he has done an eqivalent act. He has contracted with the plaintiff to become a member of their corporation, and to be interested in their stock, to the extent of one hundred dollars for each share assigned to him, if that amount be required."

And in a subsequent case, it was holden, that a stockholder, who derived his stock by a transfer from the original subscriber, and received a new certificate from the company, was personally liable to pay the instalments called for after the transfer. *The Hartford and New-Haven Rail-Road Company* v. *Boorman* & al., 12 *Conn. R.* 530.

The only difference between those cases and the present, is, that in the former the subscriptions were to the stock of a Rail-Road Company, and in the latter, to that of a manufacturing company. But the language, used in the two charters, is, in this respect, very much alike ; and we discover nothing in the object of these companies requiring a construction to be given in one case different from that given in the other. The stockholders, therefore, are equally liable, whether they ob-

tained their shares by purchase, or by virtue of an original subscription.

2. In the next place, does the amount of the shares subscribed, constitute the capital stock of the company, or only the amount actually paid in? Had these plaintiff's, when they dealt with the company, and gave them credit, a right to look to the former, as a fund applicable to the payment of their debts, or only to the latter?

The unpaid balances of the shares are as much subject to the call of the directors, as any debts due the company. Payment can as well be enforced in the one case, as in the other. The directors can, at any time, collect those balances, and if sufficient, pay off the debts due the plaintiffs. And why should they not do it? What justice is there in withholding funds, at their command and applicable to the payment of those debts?

It is apparent, that it is not for their interest to do it. The charter requires them to be stockholders, and the bill alleges, that they are such, and actually own a large amount of the shares of the company. A call upon the stockholders for funds to pay off these debts of this insolvent company, would be in part a call upon themselves, and might materially affect their own interests. They may, therefore, prefer to let these creditors suffer, rather than become sufferers themselves.

But have they a right to do this. They, with others, have embarked in a business, perhaps hazardous, and as events have shewn unfortunate, expecting to share in the profits; and why should they not also bear their proportion of the losses?

It is true, the company was incorporated, and the members were not made liable, in their individual capacities, for the debts of the company but it was necessary for the company to create a capital before they could obtain credit. This was done by the subscriptions to the capital stock. In that, there was a limit fixed to their liability, beyond which they could not be compelled to go. No stockholder can be compelled to pay more than one hundred dollars on each share he owns, let the amount of the debts of the company be ever so great. All that is required of the defendants in the present case, is, that the members, shall discharge the obligations which they

*Hartford, Nov., 1844.*

Ward
*v.*
Griswoldville
Manufacturing
Company.

*Hartford,*
Nov., 1844.

Ward
*v.*
Griswoldville
Manufacturing
Company.

assumed, upon becoming stockholders, or at least so much, as may be necessary to pay off the debts of the company.

Some stress has been laid, in the argument, upon the proviso in the act of incorporation, requiring the company, within three months from the passing of the act, to lodge a certificate with the town-clerk of *Wethersfield*, containing the amount of capital stock actually paid in and belonging to the company ; and directing that it should not be withdrawn, so as to reduce the same below five thousand dollars ; and further providing, that, if any part of the capital, paid in and certified, should be withdrawn, without the consent of the General Assembly, the directors allowing it should become liable, in case of the insolvency of the corporation. Hence it is insisted, that the capital thus certified, and not the amount of the shares subscribed, constitutes the stock of the company.

The act does not proscribe the amount of capital stock. It says, that it shall *not exceed* fifty thousand dollars ; and the fair inference to be drawn from the proviso is, that it shall not be *less* than five thousand dollars. The company, therefore, might commence business with any capital between those sums. But that the public might know the amount, it was very proper that a certificate should be lodged with the town-clerk, for the examination of those who might wish to deal with them.

Suppose the number of shares subscribed had been five hundred ; the amount paid upon each share, at the end of the three months, ten dollars ; and the company had lodged a certificate, stating, that the capital subscribed was fifty thousand dollars, and the amount then actually paid in, five thousand dollars ; would any one dealing with the company, hesitate in believing, that the amount subscribed constituted the capital stock of the company ?—He would know that but a small portion of the capital had been paid in ;—but, at the same time, he would know, from the act of incorporation, that the balance was at all times subject to the call of the directors. And if he considered them honest men, he would believe, that they would call in the remaining instalments, whenever the wants of the company required it.

The act does not prescribe the form of the certificate, but it would be natural for them to make it according to the con-

dition of the case. How it was in fact made, does not appear.

*Hartford,*
Nov., 1844.

Ward
*v.*
Griswoldville
Manufacturing
Company.

3. It is further claimed, on the part of the defendants, that the power conferred upon the directors to call in the instalments upon the shares, is a discretionary power, with the exercise of which, a court of chancery will never interfere. But that discretion is merely *neodal*, relating to the time and manner of making the payments. When the wants of the company require those payments, it becomes the *duty* of the directors to cause them to be made, as much so, as to require payment of debts due to the company. We think it is not discretionary with the directors to say whether the company debts shall be paid or not, when they have the means at command.

The case of *Catlin* v. *The Eagle Bank,* 6 *Conn. R.* 233, has been cited as an authority against this application. But that case is clearly distinguishable from this. The question there was, whether an insolvent corporation might pay one creditor in preference to others. Here the question is, whether the corporation may refuse to pay any of their creditors.

4. It is finally said, that if these plaintiffs are entitled to any remedy, it is not by a suit in chancery, but by a writ of *mandamus*, requiring the directors to make the necessary calls upon the stockholders. *The Queen* v. *The Victoria Park Company,* 1 *Adol. & El. N. S.* 288. (41 *E. C. L.* 544.) *The Queen* v. *Ledgard* & al. 1 *Adol. & El. N. S.* 616. (41 *E. C. L.* 697.) *The King* v. *St. Catharine Dock Company,* 4 *B. & Adol.* 360. (24 *E. C. L.* 73.)

The authorities cited shew, that there are cases where the officers of a company may be compelled to make calls upon the members, by a writ of *mandamus.* Whether such a writ could properly issue against the directors of this company, under any circumstances, we do not deem it necessary to enquire; because in the present case, such a writ would be wholly inadequate to give the relief prayed for in this bill.

The debts of the plaintiffs are not such as the company is bound to pay at all events. It is averred in the bill, that the company is entirely insolvent, and has no visible property. The stockholders are liable only to a certain extent. There may be other creditors entitled to share in the funds of the company, as well as these plaintiffs; and these funds may

Ward
*v.*
Griswoldville
Manufacturing
Company.

fall far short of the amount of the debts against the company, under such circumstances.

It is in the power of a court of chancery to do more ample and complete justice to the parties interested, than can possibly be done in a court of law.

The bill shews, that the plaintiffs have proceeded as far as they can at law. They have obtained judgments against the corporation—made demand upon the company for payment of these executions,—and these executions have been returned wholly unsatisfied. They are now remediless, unless the corporate funds can be reached, by the aid of a court of chancery, on a writ of *mandamus.* The former, in our opinion, is decidedly the more appropriate remedy.

Upon the whole, we think that the plaintiffs, upon the allegations contained in their bill, are entitled to relief; and that, consequently, the demurrer must be overruled.

In this opinion the other Judges concurred.

Demurrer overruled.