STATE OF CONNECTICUT *vs.* THE NORWICH AND WORCESTER RAILROAD COMPANY.

A railroad company was chartered with a capital of $1,000,000, with a provision in its charter that its capital stock should be exempt from taxation until the tolls collected by the company should be sufficient to afford a dividend of six per cent per annum on the capital stock. Its capital was afterwards increased by authority of the legislature, by adding to it at one time $300,000, at another $200,000, and at another $500,000. It was afterwards again increased by the creation of $425,000 of additional stock, to be called "preferred stock," and upon which dividends were first to be paid, the holders of the old stock to be entitled to the new, and being authorized, on paying for a certain proportion of the new stock, to surrender their old stock and take a fixed equivalent in the new. Under the authority of this provision nearly the whole of the old stock had been surrendered and the preferred stock had become substantially the whole stock of the company. Held :—

1. That the original exemption of the capital from taxation applied to the increased capital, upon every authorized increase of the same, without any express provision to that effect in the resolve authorizing the increase.
2. That the capital in its new form of "preferred stock" was equally exempt.
3. That the provision as to the tolls received affording a dividend of six per cent was not satisfied by their affording that dividend upon the original capital of $1,000,000, but that it was necessary that they should afford such a dividend upon the entire capital, including the original amount and all the increase.
4. That it was not enough if the receipts of the road amounted to six per cent per annum on the entire capital, but that they must be such as to afford a dividend of that amount after taking out all the reasonable and necessary expenses of the road for the year.

DEBT, to recover taxes claimed to be due to the state from

the defendants, under the 24th section of the statute of 1851, with regard to taxation, which provides that every railroad company shall pay an annual tax to the state of one third of one per cent on the market value of its stock. The case was tried in the superior court, on the general issue closed to the court.

The defendants were incorporated by the legislature of this state in the year 1832, by a close charter, under the name of the Boston, Norwich and New London Railroad Company, with a capital of $1,000,000—the 17th section of the charter being as follows :—" The capital stock of said corporation shall be and remain free from taxation, until the tolls collected by said corporation shall be sufficient to afford a dividend of six per cent per annum on their capital stock." In the year 1836 the corporation, under authority of the legislature, was united with a railroad company previously incorporated by the legislature of Massachusetts by the name of the Worcester & Norwich Railroad Company—the act of the legislature authorizing the union providing that the stockholders of the Massachusetts company should become stockholders of the Connecticut company, and that after the two corporations should be united by their several acceptance of that act, they should become " one corporation by the name of the Norwich & Worcester Railroad Company," and that " all the franchises, rights, powers, privileges and property owned or enjoyed by the stockholders of the Boston, Norwich and New London Railroad Company " should belong to the stockholders of the Massachusetts company " in proportion to the number of shares by each of them owned." In the year 1839 the legislature of this state authorized the Norwich and Worcester Railroad Company to increase its capital to the extent of $300,000; and in the year 1840, a further increase of $200,000 was in like manner authorized, and in 1841 a still further increase to the extent of $500,000 ; and the capital was in each case increased by the company to the extent authorized. In the year 1850 the legislature authorized a further increase of the capital to the extent of $425,000, to be called *preferred stock,* and to be entitled to a dividend of six

per cent per annum before any dividend should be paid on the old stock—the new stock to be distributed *pro rata* among the stockholders in a mode prescribed by the act, and the act authorizing the creation of the stock to be subject to amendment or repeal at the pleasure of the legislature. The additional stock was immediately taken' by the stockholders, and the capital increased to the extent and in the manner authorized.

From the year 1850 to the year 1855, a state tax was demanded of the defendants on their preferred stock and was paid by them under protest. From 1855 to the time of the institution of the present suit, the defendants refused to pay the tax, claiming that all their stock was exempted from taxation so long as their earnings were not sufficient to allow a dividend of six per cent on their whole stock, which they had never been. In the year 1854 the company made a dividend of six per cent on its preferred stock, but no other was ever made of that amount on the preferred stock, and no dividend whatever had ever been made on the other stock. The earnings of the road had however been more in the whole than six per cent on the original capital of $1,000,000.

Under a provision of the resolution of 1850 authorizing the creation of the preferred stock, most of the holders of the old stock had surrendered their old stock, taking a prescribed equivalent in the preferred stock, so that at the time the suit was brought the preferred stock had become the only capital stock of the company, except $10,800 of the old stock which had not been surrendered.

The above facts, together with the amount of the tax due if the defendants were liable to taxation, were found by the court, and the case reserved for the advice of this court.

*C. Chapman* and *Willey*, with whom was *Chadwick*, for the state, contended that the exemption of the charter applied only to the original capital of $1,000,000, and that all the increased capital was liable to taxation ; that the exemption had ceased because the earnings of the road had been more than six per cent on the original capital, to which alone the

condition with regard to the earnings applied; and especially that the preferred stock, which had now by the surrender of the original and exempted stock become substantially the whole capital stock of the company, could not be regarded as exempted under the provisions of the charter with regard to the exemption of the stock there provided for, such preferred stock being not a mere increase of capital, but a new and independent stock.

*Wait* and *E. Perkins*, with whom was *Halsey*, for the defendants, contended that the exemption from taxation was an exemption of the *capital stock* of the company, whether remaining at its original amount or increased; that the increased capital at once merged in the original and took its character and privileges in every respect; that the preferred stock did not differ from the rest of the capital except in having certain further privileges which were given to it to induce the stockholders to advance their money and take it; that the fact that it was allowed certain privileges to induce the stockholders to take it rendered it the more improbable that the legislature could have intended to withhold from it the most important privilege enjoyed by the other stock; that the six per cent intended was six per cent on the whole capital and not on the original capital alone; that it was not enough that the earnings of the road amounted to six per cent upon the whole capital, but they were to be such as to " *afford a dividend* of six per cent," which they never had been, it being the first duty of the company to keep its road in repair and the repairs having absorbed a great part of the earnings; and that the statute which by its 24th section provides for the tax, by its 6th section expressly exempted from the application of the act all corporations whose property by their charters was exempt from taxation, the later act of 1856 providing expressly that the later section was not to be construed as conflicting with the earlier one.

BUTLER, J. It appears from the finding and the resolutions referred to, that the corporation defendant was organized in

1832, under a special charter, with a capital of $1,000,000, by the name of the Boston, Norwich and New London Railroad Company, and by the 17th section of its charter it was provided that the capital stock of the corporation should be and remain free from taxation, until the tolls collected by the company should be sufficient to afford a dividend of six per cent per annum on its capital stock.

In 1836 the corporation was united with a similar one incorporated by the legislature of Massachusetts, and the name changed to that by which it is now distinguished. Referring to the resolution of that year we find nothing affecting or impairing any of the provisions of the original charter. It introduced the stockholders of the Massachusetts company as stockholders of this company, and so far forth added to the members of the company and the amount of the capital stock; and it changed the name by which the company should thereafter be known. But it expressly gave to the company thus enlarged and continued under a new name, " all the tolls, franchises, rights, powers, privileges and property then or at any time owned, acquired or enjoyed by the stockholders of the Boston, Norwich and New London Railroad Company, in proportion to the number of shares by each of them owned." It is apparent that it was the intention of the legislature to merge the Massachusetts corporation in the Connecticut one, by making the stockholders of the former, stockholders of the latter, and increasing the capital, without in any respect impairing or changing any of its chartered powers or privileges.

It also appears from the finding that by several subsequent resolutions of the general assembly and subscriptions, the capital stock of the defendants was increased to more than double its original amount. Referring to these resolutions we find nothing directly or expressly repealing or modifying any of the original provisions of the charter, or any which are in any manner repugnant to the provisions of the 17th section of the charter, and that section must be deemed and taken to be in full force, and applicable to ·the additions made to the capital stock, unless the contingency which is mentioned in it has happened and it has thereby become inoperative.

It further appears from the finding, that the net earnings of the corporation during any given year since its organization have not equaled six per cent on the capital stock then subscribed and paid. It does appear that in 1854 a dividend was paid of six per cent, but a part of it was earned in previous years, and it was not paid on all the stock. We are of opinion that by a true construction of the 17th section of the defendants' charter, it was the intention of the legislature to exempt their capital from taxation until the net annual receipts accruing during any year, after deducting all proper charges and expenses incurred during the same year, should be equal to six per cent on the then capital of the company entitled to dividends, and that such an event has not happened, and that therefore the exemption is still in full force.

In 1850 the legislature imposed a special tax upon all the railroads of the state. It is not material to inquire whether the defendants were embraced in the exempting clause contained in the sixth section of that act, as originally enacted, for the defendants paid the tax until 1856, and in that year a declaratory act was passed which shows a clear intention to exempt the defendants, if they were still exempt by the terms of their charter. We have already expressed the opinion that they are so exempt upon the facts found unless there is something more in the case. The plaintiff claims that there is. It is claimed on the part of the state that the resolution of 1850, which authorized an increase of the capital stock by the addition of four thousand two hundred and fifty shares, and constituted such additional stock, together with the old stock of such of the stockholders as subscribed for the new, " preferred stock," deprived such preferred stock of the benefits of the 17th section of the charter, or at least all except the original $1,000,000. These claims are not supported by authorities nor sustainable on principle; and it is obvious that the officers of the state have not distinguished between the capital of the corporation, strictly speaking, and the shares into which it is divided, and have misapprehended the character impressed upon a part of those shares by constituting them " preferred stock." It would perhaps be a sufficient answer

to the claims to say that if the "preferred stock" is still a part of the capital stock, it is within the letter and spirit of the 17th section of the charter. If it is not a part of it, it is not within the letter or spirit of the statute which imposed the tax. But that such "preferred stock" is part of the capital stock of the company, entitled to all the privileges conferred by the charter, seems too clear to be questioned. The capital of the corporation consists of the sums due by virtue of the subscriptions, or collected from the subscribers and invested for its benefit; and the body of the subscribers, or their assigns, constitute the corporation. The subscribers to the new stock of 1850, as well as those who subscribed for the previously authorized additions, became *immediately* stockholders or shareholders, and the sums which they respectively became obligated to pay, became *immediately* part and parcel of the *capital* of the company. *Ward* v. *Griswoldville Manufacturing Co.*, 16 Conn., 593.

It is the capital of the corporation which is in fact subjected to taxation or exempted from it; and the imposition of the tax according to the number and market value of the shares of stock, is but a means of ascertaining the taxable value of that capital. The provision in the resolution of 1850, that the new shares, and the old shares of the subscribers who took the new, should be "*called* preferred stock," did not render these subscribers any the less stockholders, or the sums due by virtue of their new subscription any the less a part of the *capital* of the corporation. The obvious, sole and simple purpose of the provision for constituting such new and old shares "preferred stock," was to encourage the taking of the new, by giving to those who should take it a preference in the division of the future earnings of the company. It reached and could reach no other provision of the charter than that relating to such distribution. The new, and the old shares of those who subscribed for the new, had no other distinctive mark or character impressed upon them. They were "preferred" in no way and for no purpose over the shares of those who did not subscribe for the new stock, except in the making of dividends. The provision for the surrendry of the cer-

tificates and the delivery of new ones, had no object or purpose except to distinguish the shares of those who subscribed for the new, so that they could enjoy the intended preference in the distribution of the annual receipts. The " preferred stock " is to all other intents and purposes part and parcel, undistinguishably, of the capital stock of the company, and its holders are entitled to all the privileges, exemptions and rights conferred upon the original stockholders, and the sums by them subscribed for the new stock are as undistinguishably a part of the capital by which the dividends are to be earned for all, if sufficient, and on which the value of the stock for taxation when taxable is to depend. Any other construction of the resolution of 1850 would be strained, and against the clear intention of the legislature, and would be productive of embarrassments in conducting the affairs of this corporation which the general assembly never could have contemplated.

The result to which we come is, that the superior court must be advised that the defendants are entitled to judgment.

In this opinion the other judges concurred.