JOHN R. LIONBERGER, ASSIGNEE, Appellant, *v.* BROADWAY SAVINGS BANK ET AL., Respondents.

### June 28, 1881.

1. Unpaid subscriptions to the stock of a corporation will pass to the assignee under a general assignment for the benefit of creditors.
2. A bill in equity will lie in favor of the assignee to recover such unpaid subscriptions.
3. That certain of the creditors of the corporation have proceeded by motion against the stockholders is no objection to the equitable proceeding.
4. The statutory remedy in favor of creditors, by motion against the stockholders, is merely cumulative, and not exclusive.
5. The case of *Schultz* v. *Sutter*, 3 Mo. App. 187, criticised.

APPEAL from the St. Louis Circuit Court, BOYLE, J. *Reversed and remanded.*

JOHN D. DAVIS and GEORGE A. MADILL, for the appel-

lant : Unpaid balances due upon contracts of subscription, by stockholders, are, on principle, a proper subject-matter of assignment, at law. — *Palmer* v. *Merrill*, 6 Cush. 286 ; *Schultz* v. *Christman*, 6 Mo. App. 341 ; *McKee* v. *Judd*, 12 N. Y. 622 ; *Foy* v. *Railroad Co.*, 24 Barb. 382 ; *Sibbald's Estate*, 18 Pa. St. 249 ; *Jordan* v. *Gellen*, 44 N. H. 424 ; *Bracket* v. *Blake*, 7 Metc. 335 ; *Stillwell* v. *Craig*, 58 Mo. 31 ; *Oglesby* v. *Insurance Co.*, 22 How. 380. No call upon the stock was necessary in order to enable the assignee to re-cover the unpaid subscriptions, the whole amount unpaid being required to pay the debts of the corporation. — *Railway Co.* v. *Fitler*, 60 Pa. St. 134 ; *Henry* v. *Railroad Co.*, 17 Ohio, 187 ; *Ward* v. *Manufacturing Co.*, 16 Conn. 601 ; *Hurlburt* v. *Root*, 12 How. Pr. 512 ; *Hightower* v. *Thornton*, 8 Ga. 486 ; *Gas-Light Co.* v. *Bennett*, 6 La. An. 460 ; *Embree* v. *Shideler*, 36 Ind. 429 ; *Allen* v. *Railroad Co.*, 11 Ala. 410 ; *Bassett* v. *Hotel Co.*, 47 Vt. 314 ; *Upton* v. *Hausborough*, 10 Nat. Bank. Reg. 374 ; *Myers* v. *Suley*, 10 Nat. Bank. Reg. 411 ; *Phœnix Ins. Co.* v. *Badger*, 67 N. Y. 294. This right to proceed in equity for the collection of these unpaid subscriptions is not affected by the fact that certain creditors are proceeding by motion against the stockholders. — *Valentine* v. *Decker*, 43 Mo. 583 ; *Einer* v. *Best*, 32 Mo. 240 ; *Crow* v. *Beardsly*, 68 Mo. 437. If, originally, the jurisdiction has properly attached in equity in any case, on account of the supposed defect of the remedy at law, that jurisdiction is not taken away by the courts of law now entertaining jurisdiction in such cases. — *Primm* v. *Raboteau*, 56 Mo. 415 ; Story's Eq. Jur., sect. 64*i* ; *The People* v. *Houghteling*, 7 Cal. 351 ; *McNab* v. *Heald*, 41 Ill. 327 ; *King* v. *Baldwin*, 2 Am. Ld. Cas. 372 ; *Irick* v. *Black*, 17 N. J. Eq. 190 ; *The People* v. *Moore*, 3 Pa. St. 161. An affirmative statute, giving a new right, does not of itself and necessarily destroy a previously existing right, created by another statute to which it does not refer ; but will do so if it appears to have been the intention of the Legislature

that the two rights should not exist together. — *O'Fla- herty* v. *McDowell*, 6 H. L. Cas. 142 ; *United States* v. *Kirby*, 7 Wall. 482 ; *The State ex rel.* v. *King*, 44 Mo. 285.

JOHN D. POPE, for the appellant.

ROBERT W. JONES, for the creditors : The bank's right to the uncalled stock arises only when calls are made, but the creditor's right arises on the return of an un- satisfied execution against the bank. — *Parton* v. *Rail- way Co.*, 3 La. An. 31 ; *The People* v. *Waples*, 3 Woods, 37 ; *Wilbur* v. *Stockholders*, 18 Nat. Bank. Reg. 179 ; *Hatch* v. *Dana*, 101 U. S. 215 ; *Fisher* v. *Seligman*, 7 Mo. App. 389. The uncalled stock was not "potential prop- erty," because there was nothing *in præsenti*, and the bank had no power to produce the future property, for this power rested in the discretion of the directors, not in the bank. It does not come within the definitions of "potential prop- erty." — *Morrill* v. *Noyes*, 3 Am. L. Reg. (N. S.) 19 ; *Jencks* v. *Smith*, 1 Comst. 90 ; *Bank* v. *Cary*, 1 Barb. 542 ; *Millman* v. *Neher*, 20 Barb. 37 ; *Pinnock* v. *Coe*, 23 How. 124 ; *Bank* v. *Abrahams*, L. R. 6 P. C. 265. The directors alone could make calls, and this discretion could not be assigned. — *Hurlburt* v. *Root*, 12 How. Pr. 512. The assignee does not represent the creditors, but takes only the estate conveyed to him by the deed, subject to all equities. And even under the old bankrupt laws this was his position. — *Brown* v. *Heathcoate*, 1 Atk. 160– 162 ; *Mitchell* v. *Winslow*, 2 Story, 637 ; *Luckenbach* v. *Brickenstein*, 5 Watts & S. 145 ; *Haggerty* v. *Palmer*, 6 Johns. Ch. 437 ; *Knowles* v. *Lord*, 4 Whart. 500 ; *Palmer* v. *Thayer*, 28 Conn. 237 ; Rev. Stats. 1879, p. 107, sect. 664 ; *Heinrichs* v. *Woods*, 7 Mo. App. 238. Equity will not intervene to prevent creditors from pursuing the statutory remedy. There is a complete remedy at law. — *Judson* v. *Rossie Galena Co.*, 9 Paige, 598 ; *Ingalls* v. *Cole*, 47 Me. 530 ; *Pollard* v. *Bailey*, 11 Nat. Bank. Reg. 280 ; *Hannah* v. *Bank*, 67 Mo. 679 ; *Pollard* v. *Bailey*, 20

Wall. 520 ; *Lane* v. *Morris*, 8 Ga. 474. The individual liability of the stockholders did not pass to the assignee. — *Pfohl* v. *Simpson*, 74 N. Y. 137 ; *Chase* v. *Lord et al.*, 77 N. Y. 1; *Lane* v. *Morris*, 8 Ga. 468 ; *State Savings Assn.* v. *Kellogg*, 52 Mo. 583 ; *Provident Savings Instn.* v. *Rink*, 52 Mo. 552–557 ; *State Savings Assn.* v. *Kellogg*, 63 Mo. 541 ; *Hannah* v. *Bank*, 67 Mo. 679 ; *St. Louis Supplies Co.* v. *Harbine*, 2 Mo. App. 134–139 ; *Mills* v. *Scott*, 99 U. S. 26 ; *L. F. College* v. *Watkins*, 70 Mo. 13. Where the statute prescribes a mode of procedure, it is exclusive. — *Pollard* v. *Bailey*, 20 Wall. 520 ; *Lane* v. *Morris*, 8 Ga. 474, 475. Stockholder is bound to the extent and in the manner prescribed. — 46 N. Y. 126 ; *Ingalls* v. *Cole*, 47 Me. 530 ; *Judson* v. *Galena Co.*, 9 Paige, 598 ; *Hannah* v. *Bank*, 67 Mo. 679.

P. E. BLAND, for the respondents : The complainant has no interest in, and was not a trustee of an express trust in relation to the subject-matter of the suit, viz. : the balances on the stock of the Broadway Savings Bank, held by its respective stockholders, remaining uncalled and unpaid at the date of the assignment, and he was therefore not a proper party plaintiff, and had no *locus standi*. — 2 Wag. Stats. 1000, sects. 3, 4. These balances did not pass under the deed, because they were not within the descriptive terms of the deed. — *Curtis* v. *Auber*, 1 Jac. & W. 506 ; *Douglass* v. *Russell*, 4 Sim. 523 ; *Leslie* v. *Guthrie*, 1 Bing. 697 ; *Langdon* v. *Horton*, 1 Hare, 549. A " call " of these balances being a condition precedent to the liability of the stockholders, and no call having been made, they cannot be made to respond at the suit of the assignee of the corporation. — *Morley* v *Thayer*, 3 Fed. Rep. 737 ; *Schultz* v. *Sutter*, 3 Mo. App. 137 ; *Hannah* v. *Bank*, 67 Mo. 678 ; *Simpson* v. *Reynolds*, 71 Mo. 594 ; *Kohn* v. *Bank*, 70 Mo. 262. There was nothing, actual or potential, at the time of the assignment, in these calls to which an assignment could attach. — *Holroyd* v. *Marshall*, 9 Jur. (N.

s., pt. 1) 213; *Hall* v. *Webb*, 28 Mo. 413; *Page & Bacon* v. *Gardner*, 20 Mo. 509; *Wright* v. *Bircher*, 5 Mo. App. 327; *Mitchell* v. *Winslow*, 2 Story, 638. Voluntary assignments and assignments in bankruptcy come within the category of volunteers, or assignments without a valuable consideration, equally as assignments to strangers where no money consideration was present. The principle is the same. — *The State* v. *Rouse*, 49 Mo. 593; *Heinrichs* v. *Wood*, 7 Mo. App. 236.

C. A. SCHNAKE, for the respondents.

BAKEWELL, J., delivered the opinion of the court.

This is an action brought by the assignee of the Broadway Savings Bank against the bank and its board of directors, the object of which is to have a call or assessment of $80 per share made upon the capital stock of the bank, for the benefit of its creditors.

The petition alleges the following facts: The Broadway Savings Bank was incorporated in January, 1869, under provisions of the General Statutes of Missouri of 1865, title 24, chapter 68, sections 1, 2, 3, and 4, with a capital stock of $250,000, with powers to increase the stock. The stock was duly increased to $300,000 in 1869, which capital stock was divided into three thousand shares of $100 each. All the shares were subscribed, and ten per cent cash paid by the subscribers; and in 1870 a call of ten per cent was made, which was also paid. No more has been paid. Defendants are the sole directors of the corporation, and were so on May 22, 1879, at which date the bank was insolvent; and, at a meeting regularly convened, the directors resolved that the bank should go into liquidation. On the same day the bank duly executed, acknowledged, and recorded a deed of assignment to John Dierberger, in accordance with the resolution of its directors. This deed describes the property and estate assigned, as follows: " The said party of the first part does now hereby

grant, bargain, sell, convey, and confirm unto said party of the second part, and does now also hereby assign, transfer, convey, and set over unto the party of the second part, all and singular, the real, personal, and mixed property and assets, of every nature, kind, and character, unto said party of the first part, belonging and wheresoever situated, including lands, tenements, goods, chattels, effects, credits, and every other species of property and rights in action at law or in equity.   *   *   *   In trust, nevertheless, for the benefit of all the creditors of the said party of the first part, according to the statutes of the State of Missouri concerning voluntary assignments, and to be administered and disposed of and applied according to said statutes.''

The petition then alleges that, at the date of this assignment, the capital stock of the bank, including all amounts remaining unpaid thereon by the stockholders, constituted a trust-fund in the hands of said bank and its said board of directors, for the benefit of the creditors of the bank, which was part of the assets and property of the bank, and passed by said deed of assignment to Dierberger, in trust for the creditors of the bank. The petition then alleges the resignation of Dierberger, and of other trustees successively appointed by the Circuit Court, and the appointment of plaintiff as assignee ; that he accepted the trust, and is the qualified assignee, etc. ; that plaintiff proceeded to allow demands to the amount of $640,000 ; that all creditors have presented their demands and had them allowed ; that plaintiff inventoried the property and assets of the bank, including the unpaid balances on all the stock ; that all the assets together, including these unpaid balances on stock, are insufficient to pay the allowed demands ; that depositors of the bank have recovered judgment against it, upon which executions have been returned *nulla bona* by the sheriff of St. Louis ; and that these judgment creditors have filed motions under the statute for executions against individual stockholders, which are pending ; that all of these judg-

ment creditors had had their demands allowed by the assignee before instituting suit, and had been paid two dividends under the assignment; that these judgment creditors are the only creditors thus proceeding, and are seeking to recover $25,000; that the whole indebtedness of the bank outstanding is $450,000, due to six hundred creditors.

Plaintiff alleges that defendants are all stockholders and directors of the bank; that he has demanded of defendants, as the board of directors, to make an assessment of $80 per share on the capital stock remaining unpaid, to enable plaintiff to collect the same and pay allowed demands, and that they refuse to do so; that plaintiff, by reason of this refusal, has no remedy at law to recover from the stockholders the sum remaining unpaid on their shares of stock.

The prayer is that the court will, by its decree, compel defendants to make an assessment, payable to plaintiff, of $80 on each share of capital stock; or, if they refuse for a period of five days after such order, that the court will make such order, and for general relief.

Defendants demurred on the ground that the petition does not set forth facts sufficient to constitute a cause of action, in this, that the uncalled subscriptions were not an interest or property capable of assignment at law or in equity, and, therefore, did not pass to the assignee.

The demurrer was sustained, and plaintiff declining further to plead, there was judgment.

There can be no doubt that when one subscribes to the capital stock of a bank he contracts with the bank to pay for the stock that he takes. The bank has no right to give away its stock, and when the agreement between the stockholder and the bank is not express, there is none the less an implied agreement to pay to the bank who issues the stock to the subscriber its par value. The law in force at the date of the subscriptions to the stock in question provided (Gen. Stats. 1865, p. 365, sect. 2) that the stock of associations

such as the defendant corporation, " shall be divided into shares of not less than one hundred dollars each, of which ten per cent upon each share shall be paid at the time it is subscribed; the remainder of the stock so subscribed shall be paid, upon such calls, and upon such terms as the directors may, from time to time, prescribe." The amount to be paid is definite and certain, and the time when it is to be be paid is also certain, in the legal sense that *id certum est, quod certum reddi potest*. *Stillwell* v. *Craig*, 58 Mo. 27. The ninety per cent retained by each shareholder when his stock is issued to him, is a debt by the shareholder to the bank, as much pledged to all parties dealing with the bank for the payment of the bank's liabilities as the cash in its vaults. It is *debitum in præsenti solvendum in futuro*. *Dayton* v. *Borst*, 31 N. Y. 435.

A possibility coupled with an interest is assignable. But, where the corporation is insolvent, the amount due to the corporation on shares of stock, but which has not yet been called in, is something more than a possibility coupled with an interest.

It is true that in England it is held that no assignments can be made of uncalled subscriptions by the corporation for the purposes of particular transactions of the corporation with its creditors. But this is on the theory that the discretion to make the calls cannot be assigned, and that these uncalled subscriptions are not property of the company immediately, but which may be called up by the directors of the company at their discretion. But the reasoning of these cases does not seem to apply to the case made by this petition, which alleges that the company is no longer viable; that it owes more than it owns, including these uncalled subscriptions; and that nothing is left for it but to make an assignment for its creditors.

. Under such circumstances, there can be no discretion as to the call. There are some adjudged cases in which it has been held that an assignee for the benefit of creditors has

no power to make calls for unpaid subscriptions to stock, because the franchise does not pass, but there are also cases in which it is held that the representative of a corporation that has ceased business, who has control of its assets, is *pro hac vice* charged with the power and duty of the directors in this respect. In other cases it has been held that, where the rights of creditors or their representatives to apply unpaid subscriptions to stock are involved, no call is necessary if the whole amount unpaid is required; and that the assignment itself is a call. *Germantown R. Co.* v. *Fitler*, 60 Pa. St. 124; *Hurlburt* v. *Root*, 12 How. Pr. 511; *Highflower* v. *Thornton*, 8 Ga. 486; *New Orleans Gas-Light Co.* v. *Bennett*, 6 La. An. 456–460; *Embree* v. *Shidler*, 36 Ind. 423; *Ward* v. *Griswoldsville*, 16 Conn. 593; *Allen* v. *Railroad Co.*, 11 Ala. 410–450; *Dalton R. Co.* v. *McDaniel*, 56 Ga. 191; *Henry* v. *Railroad Co.*, 17 Ohio, 191; *Bassett* v. *Hotel Co.*, 47 Vt. 313; *Upton* v. *Hausborough*, 10 Nat. Bank. Reg. 368; *Myers* v. *Seeley*, 10 Nat. Bank. Reg. 411; *Hall* v. *Insurance Co.*, 5 Gill, 484; *Hill* v. *Reed*, 16 Barb. 280; *Lewis* v. *Robertson*, 13 Smed. & M. 558.

*Thatch* v. *Danner*, 101 U. S. 205, was a proceeding in equity to enforce the liability of a stockholder for the amount remaining due on his subscription. The defendants insisted that, by the terms of their contract, they were to pay for the sums set opposite their names only as called for by the company; that the company had called for only thirty per cent, and that the balance was not recoverable without a call, and the contract not enforceable except according to its terms. The court says: " These positions, we think, are not supported by the authorities — certainly not by the modern cases — nor are they in harmony with sound reason, when considered with reference to the facts of the case. The liability of a subscriber for the capital stock of a company is several, and not joint. By his subscription each becomes a several debtor to the company as much so as if

he had given his promissory note for the amount of his sub-
scription. * * * That appellants are not protected by
the fact, if such was the fact, that their subscription for
stock was payable as called for by the company, we think
is clear. Assuming that such a clause in the subscription
meant more than an agreement to pay on demand, and that
it contemplated a formal call upon all the subscribers to the
stock of the company, the subscriptions were still in the
nature of a fund for the payment of the company's debts,
and it was the duty of the company to make the calls when-
ever the funds were needed for such payment. . If they were
not made, the officers of the company violated their trust,
held for both the stockholders and the company, and it
would seem singular if the stockholders could protect them-
selves from paying what they owe by setting up the default
of their own agents.''

We are of opinion that the unpaid subscriptions of stock
not called in were assignable in a general assignment for
the benefit of creditors. And if they are assignable, the
language of the instrument in the present case seems to leave
no doubt that they were assigned.

The assets are equitable assets because of the remedy.
The right of the assignee must be asserted in equity, be-
cause these subscriptions are not payable to the company
until called for by the directors, and there has been no
call, and a court of law cannot compel a call. The assent
of creditors to an assignment for their benefit will be pre-
sumed. For the purposes of this case, however, the facts
stated in the petition are to be taken as true. Express
assent to the assignment was given by every creditor, if, as
the bill alleges, all the creditors have proved under it.
The unpaid subscriptions being the only remaining assets,
and being insufficient, equity has jurisdiction to entertain a
bill by the assignee acting on behalf of all the creditors to
recover unpaid subscriptions. Nor do we think the cumu-
lative remedy given to a judgment creditor under the stat-

ute (Rev. Stats., sect. 736), any sufficient ground for refusing to entertain the bill. The assignee for the benefit of creditors, though he takes for a valuable consideration, takes no greater title than his assignor, and takes subject to any equities which would have affected the property in the hands of the assignor. His title is also determined by the policy of the law as declared in the Assignment Act (Rev. Stats., sect. 354), which is a ratable distribution of the assets. Whatever rights are given by the statute to a judgment creditor who has issued execution and proceeded against any stockholder will remain unaffected by the assignment; and we cannot see that the existence of such rights, and the fact that some creditors may have proceeded to obtain judgment and to satisfy their executions by motion against individual stockholders, is any objection to the granting of the relief asked in this proceeding.

It is contended by counsel for respondent that the contract of the stockholder, in view of the provisions of the statute, was that he was to be liable only to creditors whose executions were returned *nulla bona*, and who proceeded against him individually under the statute; that the contract, in view of the statute, provides for a reward to the diligent creditor, and excludes the idea of a common interest, and that each creditor giving credit to the bank was bound to know that those creditors only who had unsatisfied executions against the bank, and had moved in court upon these executions, could appropriate the unpaid subscriptions to the payment of their debts exclusively.

But this reasoning starts with the assumption that the remedy given by statute is exclusive; and it appears, by what has been already said, that we think that the statutory remedy against the stockholder cumulative, and not exclusive.

It is said that where a new right or means of acquiring it are given, and an adequate remedy is given in the same

statute, then the parties are confined to the statutory remedy. This is the general rule, but we think it does not apply to the case before us.

The act concerning corporations, in the General Statutes of 1845, provided (p. 232, sects. 13–16) that the individual property of any member of a corporation shall be liable to be taken on execution to double the amount of his stock for debts of the corporation contracted whilst he owned the stock, or within one year after its recorded transfer. The officer holding execution against the corporation is first to certify on the writ that he finds no property of the corporation, and then may, upon notice, levy the execution upon property of a stockholder. Or the creditor may, at his election, have an action on the case against any stockholder or stockholders, jointly or severally, on whom demand and notice have been served. The same provisions are to be found in the Revised Statutes of 1855 (p. 372, sect. 13 *et seq.*). The Constitution of 1865 provided (Art. VIII., sect. 6) that, " in all cases each stockholder shall be individually liable, over and above the stock by him owned, and any amount unpaid thereon, in a further sum at least equal in amount to such stock." And the Revised Statutes of the same year provide (p. 328, sect. 11) that, if execution has been issued against a corporation and no goods found, the execution may be issued against any of the stockholders to an extent equal in amount to the amount of stock by him owned, together with any amount unpaid thereon, provided that no execution shall issue against any stockholder except upon order of court, made on motion in open court, in the court in which the action was brought, after notice, etc. The Constitution of 1870 did away with the double liability clause, and provided (Art. XII., sect. 9) that, in no case shall any stockholder be individually liable in any amount over and above the amount of stock owned by him ; and, in the revision of 1875, the provision of the

General Statutes of 1865 was amended so as to conform to the provision of the new Constitution.

Now, this legislation does not, we think, present the case of a statute creating a right which did not previously exist, and at the same time prescribing a remedy. Where the right already exists, a statute providing a remedy is not necessarily to be interpreted as making the remedy exclusive, and ought not to be so interpreted unless such is plainly the legislative will to be gathered from the plain language of the statute, or, at least, from the reason of the thing.

Is the right of the creditor of the corporation to reach the amount which the stockholder has agreed to pay to the corporation upon call, when the corporation is insolvent and the directors have made no call, and neglect or refuse to do so, a right created by statute? We do not know why this should be said. There is now no question of double liability. The stockholder, by becoming a stockholder, incurs a personal obligation to pay the instalments required by the directors, in the manner prescribed by the charter, on the shares of stock originally subscribed. This obligation could not be more binding if it had been reduced to writing and put in the form of a note. The corporation being insolvent, the directors incurred the obligation, and stood pledged to the creditors of the corporation, to call in the subscriptions to an amount equal to the liabilities of the corporation which had matured, and the holders of which were demanding payment. The subscribers, in becoming subscribers, intended to hold themselves responsible for the payment of assessments upon their stock when the same should be legally demanded; and the directors, in becoming directors, intended to call in the payments on shares subscribed, when the necessities of the corporation required this in order to enable it to meet its legal obligations. It cannot be pretended that the subscribers to the stock subscribed with the idea that perhaps the directors would not

do their duty, and that, though the corporation might become insolvent, the subscribers might never be called upon to pay up. The corporation has made an assignment, and, if we are right in holding that it could assign, and did assign its claim to these unpaid subscriptions, the right of the assignee of the corporation to apply to a court of equity is not created by the statute giving a direct remedy to the creditor against the stockholder, but existed independently of the statute. The direct remedy of the creditor against the stockholder is given by statute, but it is not inconsistent with the right of the assignee, and where that remedy has not been asserted before the assignment, we see no reason for holding that the legislative intent is, that each single creditor may prosecute his separate suit at law for the collection against stockholders of his individual claim, to the exclusion of all other creditors, after an assignment. The statute gives a cumulative remedy to the creditor, but was not intended to give him a vested right to be paid his debt in preference to others, or to subject the stockholder to unjust vexation by various suits against him to establish a claim which, under the law, ought to be given only once to one.

The principle on which those cases are made to rest in which the rule that, where a statute creates an offence unknown to the common law, and in the enacting or prohibiting clause points out the mode of proceeding under it, that mode alone can be pursued, is not to be held applicable by analogy to all beneficial statutes. It is applied to criminal cases, because the offence and the remedy are so interwoven that they cannot be separated. *Rex* v. *Boyall*, 2 Burr. 832 ; *Livingston* v. *Van Ingen*, 9 Johns. 507 ; *Almy* v. *Harris*, 5 Johns. 175 ; *Railway Co.* v. *Kennedy*, 12 Conn. 526. A liberal interpretation is to be given beneficial statutes. Where they do not take away a common-law remedy, but prescribe a new one, the new remedy is cumulative. The power to proceed against individual stockholders is an

additional security to the creditors of the company and to the company itself. It is an incentive to the stockholders to pay.

Every consideration of public policy is strongly in favor of the view that uncalled subscriptions of stock may pass to the assignee in a general assigment of a bankrupt corporation. The present case strongly illustrates this. Here are several hundred creditors and an indebtedness of half a million. It is not only to the interest of the creditors, particularly of the large class of small creditors, but also to the interest of the stockholders, that the chancery powers of the court should be invoked to collect and to ratably distribute these uncalled subscriptions, and that parties should not be remitted to a race of diligence under the statutory remedy against the stockholders. Twenty claimants or more might otherwise proceed against one stockholder, and the costs, annoyance, and delay in a case like the present would be enormously increased, were the statutory remedy exclusive. The equality of the distribution, and the closing of the door to all sorts of bargains and evasions, is an evident benefit to be attained by an administration of the assets through the assignee.

The question presented is new, and we are alive to its grave practical importance. The briefs submitted by counsel on either side are able and apparently exhaustive. No pains have been spared to furnish us with reference to cases bearing upon the questions involved. A very large proportion of these cases, however, turns upon special statutory or charter provisions, or upon contracts of such a character as to impair their value as authority upon the precise questions in this case.

We do not think that the result at which we have arrived is in disaccord with any rulings in Missouri. In *Hannah* v. *Moberly Bank*, 67 Mo. 686, Judge Hough, in delivering the opinion of the court, says that, " as the matter now stands, so far as the liability of the stockholders is concerned, it is

a race of diligence." We understand him, however, as speaking with a view to the case before him, which was a proceeding at law for satisfaction of a judgment. . There the sheriff, under the appropriate section of the execution law, seized the stock-book of defendant corporation as containing evidences of debt, and, having been appointed receiver by the court, was proceeding under this appointment to collect the unpaid subscriptions. If this could be done, the statute providing for a proceeding by the stockholder on motion would be nugatory, because there could be no return of *nulla bona* whilst any stock remained unpaid. The court says that since the abolishment of the double liability of stockholders "a stockholder can only be proceeded against individually for the amount of his unpaid stock." That is, at law, on execution, under the statute. But the idea that under some other form of proceeding the entire property of the bank might be distributed ratably is not only not excluded, but is expressly suggested by Judge Hough toward the close of the opinion. Nor does this case decide that subscription to stock not called in is not evidence of indebtedness to the bank in any sense, but that it is not an evidence of indebtedness to the bank within the meaning of the statute which authorizes the sheriff to seize such evidences of indebtedness.

*Simpson* v. *Reynolds*, 71 Mo. 594, merely holds that a judgment creditor of a corporation cannot enforce the liability of a stockholder to the corporation by garnishment, when the stockholder is not in default, no calls having been made ; and that the judgment creditor can proceed to satisfy his execution only in accordance with the provision of the statute. Wag. Stats. 291, sect. 13.

In *Kahm* v. *Bank of St. Joseph*, 71 Mo. 262, it was held that the words "in any form indebted to the bank," referred to indebtedness outside of the stock subscriptions. But the court expressly says that the word "indebted" is sufficiently comprehensive to embrace unpaid stock, as well as any form of indebtedness, if the context and gen-

eral scope of the instrument did not require a more narrow construction. "The word 'indebted,'" says Judge Napton, "is large enough to include unpaid stock never called for."

Our attention is called to the case of *Schultz* v. *Sutter*, 3 Mo. App. 137. That was an action by the assignee of an insolvent corporation to recover calls made before the assignment to the amount of $300 upon a stock-note for $900. It was held by this court that the corporation might make an assignment of the call already due on the stock-note; and further, that the assignment transferred to the assignee the whole cause of action in respect to the stock-note which existed at the date of the assignment, and that; the reason failing, the rule against assigning part of a chose in action did not apply. It is, indeed, said in the opinion that the assignment did not operate an assignment of that part of the stock-note not called in; but it is evident, not only that this view of the effect of the assignment is not essential to the result reached by the court, but that, if it be held that the whole note passed by the assignment, the difficulty as to assigning part of a chose in action disappears from the case. The called portion of the note passed by the assignment; whether it did or not, is the only point in the case; the reasoning of the learned judge who delivered the opinion and what is said in it as to the non-assignability of uncalled subscriptions, cannot control in the decision of the present case. It is true that the view expressed by him as to the non-assignability of the uncalled part of the note is not destitute of respectable authority; but the precise point being now before us for determination, after consideration, and in view of the authorities cited in the very carefully prepared brief of appellant, we are not able to stand to the *dictum* in *Schultz* v. *Sutter*, in this matter.

We think that the court below erred in sustaining the demurrer to the petition. The judgment will, therefore, be reversed and the cause remanded. All the judges concur.