## HATCH *v.* DANA.

1. Creditors of an incorporated company who have exhausted their remedy at law can, in order to obtain satisfaction of their judgment, proceed in equity against a stockholder to enforce his liability to the company for the amount remaining due upon his subscription, although no account is taken of the other indebtedness of the company, and the other stockholders are not made parties; although, by the terms of their subscriptions, the stockholders were to pay for their shares "as called for" by the company, and the latter had not called for more than thirty per cent of the subscriptions.
2. *Pollard* v. *Bailey* (20 Wall. 520) and *Terry* v. *Tubman* (92 U. S. 156) distinguished from the present case.

APPEAL from the Circuit Court of the United States for the Southern District of Illinois.

On April 12, 1871, Charles A. Dana recovered a judgment in the Circuit Court of the United States for the Northern District of Illinois, against the Chicago Republican Company, a corporation organized and existing under the laws of the State of Illinois, for the sum of $6,419.17 and costs.

An execution issued upon this judgment was by the marshal of the United States for that district returned *nulla bona.*

Thereupon, on Aug. 23, 1871, Dana, on behalf of himself and all other creditors of the company who might come in and seek relief by and contribute to the expense of the suit, exhibited in the Circuit Court of the United States for the Southern District of Illinois his bill in equity against the company, Hatch, Williams, and other resident stockholders, averring the incorporation of the company in February, 1865, with a capital stock of $500,000, divided into shares of $100 each; that at a meeting of the incorporators, held in Chicago in April, 1865, certain stock subscriptions were made, Hatch and Williams each subscribing for one hundred shares; that a complete organization of the company was effected, and an assessment of twenty per cent declared upon the stock subscribed, the company thereupon commencing business; that eighty per cent of the subscriptions to stock so made still remains unpaid; that in October, 1870, the company so organized sold and transferred all its tangible property, credits, and subscription lists to a corporation of a very similar name, and thereupon

ceased to do business; that the company is wholly insolvent; avers the recovery of the judgment aforesaid, the issue and the return unsatisfied of an execution thereon; that there are no other unpaid creditors than the complainant. It prays that, upon an accounting of the amount unpaid upon the stock subscriptions of the stockholders named as defendants, they may be decreed to pay so much of the balance found unpaid on their respective subscriptions as will be sufficient to pay the ascertained debts of the corporation, including the judgment aforesaid; and for general relief.

The complainant dismissed the bill as to all of the defendants except Hatch and Williams. They, in their answer, admit the incorporation and organization of the company, as alleged in the bill; do not deny that they were of the original stockholders therein to the amount alleged in the bill, but aver that they paid in thirty per cent of the amount subscribed by them; admit the sale of its property in October, 1870, and that since then it has done no business; do not know whether it is indebted to the complainant or any other person, or whether or not it is insolvent; deny the recovery of the said judgment and call for full proof thereof, but admit that, if such judgment was lawfully rendered, it still remains in full force and unsatisfied; aver that about Aug. 1, 1866, the company determined to reduce its capital stock from $500,000 to $200,000, and did so, calling in all existing certificates, and reissuing to the holders thereof new certificates for two-fifths of the amount which they originally held, since which time various transfers of portions of the new or substituted stock have been made, but the respondents do not know to whom or by whom they have been made; state the names of certain persons who, together with the defendants, are holders and owners of portions of the stock; and ask that all said persons be made parties, and that an accounting be had, in conformity with the prayer of the bill.

A replication to the answers was filed.

The facts of the case are set out in the complainant's bill. A decree was rendered Jan. 6, 1879, that the complainant, Charles A. Dana, recover of Hatch and Williams the sum of $9,398.72, being the amount due on that day upon the said

judgment, and that they pay the costs of the suit to be taxed ; it being provided, however, that of the sum so decreed to be paid not more than $7,000, together with interest thereon from the date of the decree, at the rate of six per cent per annum, shall be made and collected from either said Hatch or Williams, the said sum of $7,000 being the amount the court finds each of them to owe and be indebted to the Chicago Republican Company.

From this decree Hatch and Williams appealed.

*Mr. D. T. Littler* for the appellants.

The remedy sought in this case by the complainant is in virtue alone of the general equity jurisdiction of the court in the premises.

A court of equity will never allow a trust to fail on account of the failure or refusal of a trustee to perform his duty. When, therefore, the creditors of a corporation are unable to obtain satisfaction in the ordinary mode, if the stockholders are indebted to the corporation on account of subscriptions made by them to the capital stock, and the board of directors fail or refuse to raise the money to pay such debts by making and enforcing against the members the necessary assessments, a court of equity will interfere, and either compel the directors to perform this duty, or, according to the modern practice, perform it by its own proper officers. The rights of creditors being superior, and partaking somewhat of the character of a lien, equity will regard and work them out by the same means by which the corporation itself should have done so. *Adler* v. *Milwaukee Patent Brick Co.*, 13 Wis. 57 ; *Ward* v. *Griswold-ville Manufacturing Co.*, 16 Conn. 601 ; *Henry* v. *Vermillion*, 17 Ohio, 187. The court will either compel the board of directors to make an assessment, or it will exercise its power through its own officers and processes to accomplish the same substantial result.

The bill must be filed against all the shareholders, unless some valid excuse is shown for not bringing them in. This must necessarily be so ; otherwise the main object of asserting the jurisdiction of equity, the equalizing of the burden of the shareholders, and the preventing of a multiplicity of suits would be defeated. Under such a bill an account will be taken of

the debts and assets of the corporation, of the amount of capital not paid in, and of the amount due from each shareholder. A receiver appointed in a creditor's suit against a corporation cannot maintain a bill in equity against a single shareholder to collect what is unpaid on his subscription. Thompson, Liability of Stockholders, sect. 353; *Wood* v. *Dummer,* 3 Mas. 312; *Hadley* v. *Russell,* 40 N. H. 109; *Erickson* y. *Nismith,* 46 id. 371; *Mann* v. *Pentz,* 3 N. Y. 415; *Pierce* v. *Milwaukee Con. Co.,* 38 Wis. 253; *Adler* v. *Milwaukee Patent Brick Co.,* 13 id. 57; *Coleman* v. *White,* 14 id. 700; *Carpenter* v. *Marine Bank,* id. 705; *Umsted* v. *Buskirk,* 17 Ohio St. 113; Story, Eq. Jur., sect. 1252; *Pollard* v. *Bailey,* 20 Wall. 520; *Terry* v. *Tubman,* 92 U. S. 156.

In 2 Story, Eq. Jur., sect. 1252, it is said: "The property of private corporations is deemed a trust fund, and the creditors may enforce their claims against it into whosesoever hands it may come, as well before as after dissolution, unless it may have come to the hands of a *bona fide* purchaser. Upon the like ground the capital stock of an incorporated bank is deemed a trust fund for all the debts of the corporation, and no stockholder can entitle himself to any dividend or share of such capital stock until all the debts are paid; and if the capital stock should be divided, leaving any debts unpaid, every stockholder receiving his share of the capital would in equity be held liable *pro rata* to contribute to the discharge of such debts out of the funds in his own hands. This, however, is a remedy which can be obtained in equity only; for a court of common law is incapable of administering any just relief, since it has no power of bringing all the proper parties before the court, or of ascertaining the full amount of the debts, the mode of contribution, the number of the contributors, or the cross equities and liabilities which may be absolutely required for a proper adjustment of the rights of all parties, as well as of the creditors," citing *Wood* v. *Dummer, supra; Vose* v. *Grant,* 16 Mass. 9; *Carson* v. *African Company,* 1 Vern. 121.

The unpaid subscriptions for stock in an insolvent corporation constitute a trust fund for the benefit of all creditors of the corporation alike or *pro rata,* and it is not permissible to one creditor to absorb the same to the exclusion of others.

The bill as framed and filed in this cause properly recognizes the above rule. It is in form a general creditor's bill, under which, if opportunity had been afforded by the court, all creditors might have come in and sought relief, subject to the condition of contributing to the expense of the suit. But no such opportunity was afforded them. There was neither a reference for ascertaining them, nor notice to them to come in.

Although the complainant was not bound to hunt up the creditors, it was incumbent upon the court to refer the cause to a master, with directions to cause notice, by publication or otherwise, to be given to all creditors before proceeding to a final decree appropriating the whole fund to complainant.

" The general rule is that a creditor who proceeds in chancery to subject the liability of the shareholders of an insolvent corporation must bring his bill on behalf of all other creditors who may come in and establish their debts according to the course of a court of chancery. Whilst liens and legal priorities are preserved, he does not obtain a preference over other creditors by the filing of such a bill; but the property of the corporation, or the sums due from shareholders in respect of their individual liability, are sequestered for the ratable benefit of all the creditors." 2 Story, Eq. Jur., sect. 1252; *Wood* v. *Dummer, supra; Morgan* v. *New York Railroad Co.*, 10 Paige (N. Y.), 290; *Mann* v. *Pentz*, 3 N. Y. 415; *Masters* v. *Ressis L. Mining Co.*, 2 Sandf. (N. Y.) 301; *Coleman* v. *White*, 14 Wis. 700; *Carpenter* v. *Marine Bank*, id. 705; *Crea* v. *Babcock*, 10 Metc. (Mass.) 525; *Umsted* v. *Buskirk*, 17 Ohio St. 113; *Pollard* v. *Bailey*, 20 Wall. 520; *Terry* v. *Tubman*, 92 U. S. 156.

*Mr. E. B. McCagg, contra.*

1. Dana's judgment, the insolvency of the company and its withdrawal from business, entitled him to enforce from its delinquent stockholders, for his benefit, the collection of their unpaid stock subscriptions. *Dalton & Morganton Railroad Co.* v. *McDaniel*, 56 Ga. 191; *Henry* v. *V. & A. R. R. Co.*, 17 Ohio, 187; *Ogilvie* v. *Knox Insurance Co.*, 22 How. 380; *Upton, Assignee*, v. *Tribilcock*, 91 U. S. 45; Angell & Ames, Corporations, sect. 602.

2. It was not necessary to make all the delinquent stockholders parties defendant to his bill. *Ogilvie* v. *Knox Insurance Co., supra; Bartlett* v. *Drew,* 57 N. Y. 587.

MR. JUSTICE STRONG delivered the opinion of the court.

This bill is an ordinary creditor's bill, the sole object of which is to obtain payment of the complainant's judgment. It is true it is brought on behalf of the complainant and all other creditors of the corporation who might choose to come in and seek relief by it, contributing to the expense of the suit. But no other creditors came in ; and it does not appear that there is any other creditor, unless it be one of the stockholders, who was made a defendant, and who filed a cross-bill which he afterwards dismissed. All the stockholders were not made defendants.

The bill was not a bill seeking to wind up the company. It sought simply payment of a debt out of the unpaid stock subscriptions.

That unpaid stock subscriptions are to be regarded as a fund, which the corporation holds for the payment of its debts, is an undeniable proposition. But the appellants insist that a creditor of an insolvent corporation is not at liberty to proceed against one or more delinquent subscribers to recover the amount of his debt, without an account being taken of other indebtedness, and without bringing in all the stockholders for contribution. They insist, also, that by the terms of the subscriptions for stock made by these appellants they were to pay for the shares set opposite their names respectively, " as called for by the said company ; " that the company made no calls for more than thirty per cent; that, therefore, this company could not recover the seventy per cent unpaid without making a previous call ; and that a court of equity will not enforce the contract differently from what was contemplated in the subscription.

These positions, we think, are not supported by the authorities, — certainly not by the more modern ones, — nor are they in harmony with sound reason, when considered with reference to the facts of this case. The liability of a subscriber for the capital stock of a company is several, and not joint. By his

subscription each becomes a several debtor to the company, as much so as if he had given his promissory note for the amount of his subscription. At law, certainly, his subscription may be enforced against him without joinder of other subscribers; and in equity his liability does not cease to be several. A creditor's bill merely subrogates the creditor to the place of the debtor, and garnishes the debt due to the indebted corporation. It does not change the character of the debt attached or garnished. It may be that if the object of the bill is to wind up the affairs of this corporation, all the shareholders, at least so far as they can be ascertained, should be made parties, that complete justice may be done by equalizing the burdens, and in order to prevent a multiplicity of suits. But this is no such case. The most that can be said is that the presence of all the stockholders might be convenient, not that it is necessary. When the only object of a bill is to obtain payment of a judgment against a corporation out of its credits or intangible property, that is, out of its unpaid stock, there is not the same reason for requiring all the stockholders to be made defendants. In such a case no stockholder can be compelled to pay more than he owes.

In *Ogilvie* v. *Knox Insurance Company* (22 How. 380) the question was considered. That was a case in which several judgment creditors of a corporation had brought a creditor's bill against it and thirty-six subscribers to its capital stock. The bill alleged that the complainants had recovered judgments against the company, upon which executions had been issued and returned " no property;" that the other defendants had severally subscribed for its stock; and that the subscriptions remained unpaid, payment not having been enforced by the company. The prayer of the bill was that these other defendants might be decreed to pay their subscriptions, and that the judgments might be satisfied out of the sum paid. It was objected, as here, that the bill was defective for want of proper parties; but the court held the objection untenable. In delivering the opinion of the court, Grier, J., said: " The creditors of the corporation are seeking satisfaction out of the assets of the company to which the defendants are debtors. If the debts attached are sufficient to pay their

demands, the creditors need look no further. They are not bound to settle up all the affairs of this corporation, and the equities between its various stockholders, corporators, or debtors. If A. is bound to pay his debt to the corporation in order to satisfy its creditors, he cannot defend himself by pleading that these complainants might have got their satisfaction out of B. as well. It is true, if it be necessary to a complete satisfaction of the complainants that the corporation be treated as an insolvent, the court may appoint a receiver, with authority to collect and receive all the debts due to the company, and administer all its assets. In that way all the other stockholders or debtors may be made to contribute." The court, therefore, directed a decree against the respondents severally for such amounts as appeared to be due and unpaid by each of them for their shares of the capital stock.

This case is directly in point, and it does not stand alone. In *Bartlett* v. *Drew* (57 N. Y. 587), it was ruled that when the property of a corporation had been divided amongst its stockholders before all its debts had been paid, a judgment creditor, after the return of an execution unsatisfied, might maintain an action, in the nature of a creditor's bill, against a stockholder to reach whatsoever was so received by him, and that he was not required to make all the stockholders parties to the action ; that he had nothing to do with the equities between the stockholders, unless he chose to intervene to settle them. This is much beyond what the complainant needs in this case. It is enforcing against stockholders in severalty what the corporation could not enforce, without any regard to the equities of one against the others.

So in *Pierce* v. *The Milwaukee Construction Co.* (38 Wis. 253), which was a proceeding analogous to a creditor's bill, and brought to enforce payment to a judgment creditor of the company of unpaid subscriptions to its capital stock, it was ruled that the complaint was not bad because all the stockholders were not made defendants. This, it is true, was a proceeding under a statute, but it was a statute enacting substantially this equity rule.

In *Marsh* v. *Burroughs* (1 Woods, 468), a bill of certain creditors who had recovered judgments against a bank, to

recover from some stockholders who had not paid in full their subscriptions, non-joinder of parties was set up in defence. Mr. Justice Bradley said : " A judgment creditor who has exhausted his legal remedy may pursue in a court of equity any equitable interest, trust, or demand of his debtor, in whose-soever hands it may be.   And if the party thus reached has a remedy over against other parties for contribution or indem-nity, it will be no defence to the primary suit against him that they are not parties.   If a creditor were to be rtayed until all such parties could be made . to contribute their proportionate share of the liability, he might never get his money.".

The case of *Wood* v. *Dummer* (3 Mas. 308), upon which the appellants largely rely, was not an attempt to reach unpaid stock subscriptions.   It was sought to follow the property of a corporation paid over to its shareholders before its debts were paid.   But even in .that case the bill was sustained, though all the shareholders were not made defendants.   Those not sued appear to have been treated only as convenient, not as necessary parties.

The cases of. *Pollard* v. *Bailey* (20 Wall. 520) and *Terry* v. *Tubman* (92 U. S. 156) are not in conflict with *Ogilvie* v. *Knox Insurance Company*.   They arose under statutory provisions imposing upon the stockholders of banks a liability for the debts of the corporation, " in proportion to their stock held therein."   It was this liability beyond the stock subscription which was sought to be enforced, and as it was only a propor-tional liability, its extent could be ascertained only when the obligation of the other shareholders was taken into considera-tion.   Hence it was ruled that the proper mode of proceeding was by bill in equity in which an account of the debts and stock could be taken and a *pro rata* distribution could be made.   Not a hint was given that the latter case was intended to be questioned or qualified.   Indeed, *Pollard* v. *Bailey* and *Terry* v. *Tubman* have little analogy to it, or to the case we have now before us. · They were both suits at law.   The debt due by these appellants to the corporation of which they are members is a fixed and definite one, and it is neither more nor less because other debts may be due to the company from other stockholders.

We hold, therefore, that the complainant was under no obligation to make all the stockholders of the bank defendants in his bill. It was not his duty to marshal the assets of the bank, or to adjust the equities between the corporators. In all that he had no interest. The appellants may have had such an interest, and, if so, it was quite in their power to secure its protection. They might have moved for a receiver, or they might have filed a cross-bill, obtained a discovery of the other stockholders, brought them in, and enforced contribution from all who had not paid their stock subscriptions. Their equitable right to contribution is not yet lost.

That the appellants are not protected by the fact, if such was the fact, that their subscriptions for stock were payable "as called for by the company," we think is clear. Assuming that such a clause in the subscription meant more than an agreement to pay on demand, and that it contemplated a formal call upon all subscribers to the stock of the company, the subscriptions were still in the nature of a fund for the payment of the company's debts, and it was the duty of the company to make the calls whenever the funds were needed for such payment. If they were not made, the officers of the company violated their trust, held both for the stockholders and the company. And it would seem to be singular if the stockholders could protect themselves from paying what they owe by setting up the default of their own agents. But in this case the company went out of business before the complainant obtained his judgment, and it does not appear that since that time it has had any officers who could make the calls. Before that time its president was dead. However this may be, it is well settled that a court of equity may enforce payment of stock subscriptions though there have been no calls for them by the company. In *Henry* v. *Railroad Company* (17 Ohio, 187), a suit brought by a judgment creditor of a corporation to enforce payment by its stockholders of their unpaid subscriptions, for which calls had not been made, it was held that when a company ceases to keep up its organization, and abandons all action under the charter, a proceeding at the instance of the creditor becomes indispensable. It was further said : " When a company, becoming insolvent, as in this case, aban-

dons all action under its charter, the original mode of making calls upon the stockholders cannot be pursued. The debt, therefore, from that time must be treated as due without further demand." This means, of course, as between the debtor and the creditor of the corporation. After all, a company call is but a step in the process of collection, and a court of equity may pursue its own mode of collection, so that no injustice is done to the debtor.

In the English courts a *mandamus* is sometimes awarded to compel the directors to make the necessary calls. *Queen* v. *The Victoria Park Co.*, 1 Ad. & El. N. S. 544; *Queen* v. *Ledgard*, id. 616; *The King* v. *Katharine Dock Co.*, 4 Barn. & Ad. 360. But this remedy can avail only when there are directors. The remedy in equity is more complete, and it is well recognized. *Ward* v. *The Griswoldville Manufacturing Co.*, 16 Conn. 593. In such cases it is nowhere held, so far as we know, that a formal call must be made before a bill can be filed. Indeed, the filing of the bill is equivalent to a call. Before it is filed, the court has no jurisdiction of the matter. In bankruptcy, an assessment or a call may be made, for the assignee of a bankrupt corporation succeeds to its rights and becomes the legal owner. Not so in equity.

In *The Dalton, &c. Railroad Co.* v. *McDaniel* (56 Ga. 191), a creditor's bill very like the present was filed. It was objected by the stockholders, who were defendants, that it was for the directors of the company and not for the court to call in the stock subscriptions, and that their contract only obligated them to obey a call emanating from the company; but it was ruled that " principle and sound reason accord with authority that equity will grant relief in all such cases."

In view of these considerations we think none of the assignments of error are sustained.

*Decree affirmed.*