## Palmer et al. v. Wood et al.

1. *Parties in Chancery—Adjudication under Void Order.*—Where persons came into court, under a notice and order of the court requiring all creditors of a defunct banking institution, having claims similar to those of the complainants in the suit, to appear and manifest their demands, and subsequently the court set aside the order, as having been illegally entered, and dismissed the parties brought in under it, *it was held* that there was no adjudication as to the claims held by these parties. They came in under one order of the court and retired under another, holding the former one to have been inadvertently made, and were left in *statu quo*, the same as if their names had never appeared in the case.

2. *Pleading in Chancery—Pure Pleas, etc.*—A pure plea, as known in chancery practice, must set up some matter not appearing on the face of the bill.

3. *Anomalous Pleas.*—Anomalous pleas, or pleas not pure, rely upon matters stated in the record, and upon denials and negations of matters of fact contained therein, which, if true, constitute a sufficient defense against further proceedings in the suit.

4. *Statute of Limitations in Chancery.*—When the objection that the statutory period has elapsed appears on the face of the bill, a demurrer will lie; but if it does not so appear, a plea of the statutory bar will be proper.

Palmer v. Wood.

5. *Limitations—Equity Follows the Law.*—In equity, where there is concurrent jurisdiction with courts of law, the statute of limitations will be equally binding; but there are many cases where equity acts, not so much in obedience to the law of limitations, as in analogy to it. Aside from the cases where the statute may be applied, lapse of time will, in many cases, constitute a bar to equitable relief.

6. *Death of a Party.*—Where, in a suit in chancery, a party defendant dies after the cause is submitted and while under advisement, the court may, upon rendering the decision, dismiss the bill as to deceased party (no administrator having been appointed), or may enter its decree *nunc pro tunc* on motion of the complainants, or possibly the surviving defendants.

7. *Statute of Limitations—Administrator of Deceased Stockholder— Plea of, by.*—The administrator of a deceased stockholder may successfully plead the statutory limitation of two years as to the estate in his hands to be administered upon.

8. *Creditor's Bill Against Stockholders of a Defunct Corporation.*— A creditor of a corporation may, after judgment against it and return of execution *nulla bona*, file a creditor's bill against one or more stockholders delinquent for non-payment of stock subscriptions. It is not indispensable that all should be joined; a delinquent stockholder may, by cross-bill, bring in other delinquent stockholders and enforce contribution

9. *Losses—How Ascertained, etc.*—The "losses," for which these stockholders are liable to depositors, are not to be ascertained by deducting the assets of the corporation from the claims of the depositors, but the latter may seek from the stockholders full payment of whatever is due from the corporation.

10. *Liability of a Stockholder.*—The liability of the stockholder is regarded as primary, and he must make good the unpaid balance due the depositors, regardless of what may be realized from the corporate assets.

11. *Parties—Persons in Interest Not Always Necessary.*—In a suit against the stockholders of an insolvent corporation, it is not necessary that all the stockholders should be made parties. The rules and practice which might well apply to different cases, requiring all persons interested to be brought in, do not apply to cases of this kind.

Memorandum.—Proceedings in chancery against stockholders. Appeal from a decree rendered by the Circuit Court of Sangamon County; the Hon. JACOB FOUKE, Circuit Judge, presiding. Heard in this court at the November term, A. D. 1892, and affirmed. Opinion filed March 6, 1893.

## APPELLANTS' STATEMENT OF THE CASE.

This is a proceeding in equity by Wood and others, com-

plainants, who sued not only for themselves, but for all others having like rights and equities. The bill was filed August 24, 1886, and the claim by complainants is, that they are creditors of the Springfield Savings Bank, a corporation, by virtue of the charter granted by the legislature of Illinois (see Pr. Laws 1867, Vol. 1, page 62); that the defendants and others, as stockholders of said bank, are liable to complainants for their respective claims, under the provisions of the charter of the bank. The bill avers and the proof shows, that after the organization of said bank, and the transaction of business for some ten years or more, to wit, on the 17th day of December, 1877, the bank suspended business and became insolvent, at which time defendants and others were stockholders. The bank never resumed business, but on the 17th day of April, 1879, it assigned all its assets and property to Virgil Hickox, for the benefit of its creditors. John S. Bradford was, on the 19th day of September, 1879, appointed assignee of said bank, in the place of said Hickox, who had resigned. Bradford was acting as such assignee before and at the time of filing the bill. At the time of the failure, 17th December, 1877, the bank was indebted to complainants and others. The capital stock of the bank was, by its charter, fixed at $100,000, divided into 1,000 shares of $100 each.

The stockholders' liability sought to be reached, is not for unpaid stock, but a liability under the charter provision reading: "The stockholders of said corporation shall be responsible in their individual property in an amount equal to the amount of stock held by them respectively, to make good all losses to depositors or others."

### APPELLANTS' BRIEF.

Appellees are equitably estopped from prosecuting this suit for the reason that they have been guilty of such delay in bringing their suit that it would be inequitable to grant the relief they seek. Their right of action was complete on the 17th day of December, 1877, and their suit was not brought until August 24, 1886, a period of over eight years.

Palmer v. Wood.

Above all things, equity requires diligence of him who would solicit its aid. It will not come to the aid of the laggard and enforce his stale claim. Brink v. Steadman, 70 Ill. 241; Pomeroy's Equity, Vol. 1, Sec. 418.

A defense peculiar to courts of equity, is that founded upon mere lapse of time, and the staleness of the claim, in cases where no statute of limitations directly governs the case. Vol. 2, Story's Eq. Juris., Sec. 1520; Carpenter v. Carpenter, 70 Ill. 457.

W. L. Gross and Palmer, Shutt & Drennan, attorneys for appellants.

C. A. Keyes and R. L. McGuire, attorneys for appellees.

Opinion of the Court, *the Hon. George W. Wall, Judge.*

This case was before us at the November term, 1890, reported in 40 Ill. App. 182, under the style of Wood v. Wood, and was reversed and remanded for a reason there stated. The Circuit Court proceeded to another decree and the record is before us again, on the appeal of defendants Wood, Palmer, Helmle and Reisch.

The point principally argued is that the court below refused to set down for argument the pleas which had been adjudged bad by the court prior to the former decree. The position is assumed that the reversal of that decree opened the case throughout to be heard *de novo.* The action of the court in refusing to again consider the pleas amounted in substance to holding them bad, and the question arises whether they should be so regarded.

These pleas were on behalf of Helmle, Palmer and Reisch only. Wood filed neither plea nor answer, and suffered a default to be taken as to him.

The first plea set up the decree in the Queenan case as a bar. The second set up as a bar the statute of limitations, five years. The third set up the Queenan decree as a bar as to certain of the present complainants.

The complainants referred to in this plea had come into

the Queenan case, not as original complainants, but under a notice and order of the court, requiring all creditors having claims similar to those of the complainants filing the bill to appear and manifest their demands. Subsequently, the court held that this order, under which they came in, was entered without due consideration, and therefore set the same aside and dismissed the parties so brought in, from the case.

It is now suggested that this amounts to an adverse adjudication upon their claims, and therefore they are barred. We can not accede to this view. There was no adjudication whatever as to the claims held by these parties. They came in under an order of the court, and they retired under another order of the court, holding the first order to have been inadvertent. Thus, these parties were left in *statu quo*, and they were in the same position as to the other complainants in the present case, whose names nowhere appeared in the Queenan case.

The fourth plea set up the non-joinder of Nolte, Bateman and Johnson, who were also stockholders, as defendants to the bill. No error is assigned as to this plea, specifically, but the subject-matter of it is presented under another assignment of error, which will be noticed further on.

The first and third pleas may be considered together, and they are disposed of by our holding, when the case was formerly here, that the Queenan case constituted no bar to the depositors who were not parties thereto.

No argument is presented in support of the second plea, setting up the statute of limitations five years, and we may perhaps assume counsel to concede the plea is not good. A pure plea, as known in chancery practice, must set up some matter not appearing on the face of the bill. Story's Eq. Pl. Sec. 660. Anomalous pleas, or pleas not pure, rely upon matters stated in the record, and upon denials and negations of matters of fact contained therein, which denials and negations, if true, constitute a sufficient defense against further proceedings in the suit. Ib. 667.

When the objection, that the statutory period has

elapsed, appears on the face of the bill, a demurrer will lie. If it does not so appear, a plea will be proper. Ib. 751. Assuming that the relief here sought would be barred by the statute of limitations five years, the objection appears on the face of the bill. Hence, the plea was unnecessary, and according to strict rules of equity pleading, improper.

The plea here filed was not a "pure" plea, for it was not founded on new matter not apparent on the face of the bill; nor did it answer the description of an "anomalous" plea.

It appears from the evidence, and the report of the master, that in proof of each claim, the depositor produced a pass-book, or a certificate of deposit.

In Fleisher v. Rentchler, 17 Brad. 402, which was a proceeding at law upon a liability similar to that here involved, it was held that the written evidence contained in a certificate of deposit, issued by the bank, was as binding upon the stockholder as upon the corporation, and that the action was not barred until after the lapse of ten years; and in Schalucky v. Field, 124 Ill. 617, it was so held as to the written evidence contained in a depositor's pass-book.

In the present case the lapse of five years would not bar the remedy. If the proceeding were at law the limitation would be ten years. In equity, where there is concurrent jurisdiction with courts of law, the statute of limitations would be equally binding. But there are many cases where it is said that equity acts not so much in obedience to the law of limitations, as in analogy to it. Aside from the cases where the statute may be applied, lapse of time will, in many cases, constitute a bar to equitable relief.

Where resort is had to chancery to enforce a statutory liability, it is quite clear the statute of ten years should be applied, and that no delay short of that time should hinder the proceeding. This view will also dispose of the argument in behalf of appellants, that the remedy is barred by *laches*, the bill being filed some eight years after the bank suspended.

It is objected that appellants are credited with the amounts paid by them in the Queenan case without any-

thing in the pleadings upon which to base such credits; that this action is purely voluntary, a mere matter of grace and favor, and without evidence in the record on which to ascertain the proper amounts.

As it is not objected that the proper amounts were not really credited, we see nothing here of which appellants may complain; but it appears that the master's report upon which the court acted contains among other matters a copy of the decree in the Queenan case from which the amounts adjudged against each of the defendants in that case can be ascertained. The objection is also made that Tracy and Salter were dismissed. This is met by the finding of the decree that they took no appeal from the former decree, and that they paid the amounts adjudged against them.

These two were small stockholders, each having ten shares. Tracy was a party to the Queenan case, and presumably might have been credited in this case with what he paid in that; but he preferred to pay rather than to join in the former appeal. Salter was not a party to the Queenan case. The amounts paid by these two stockholders, aggregating $383, were deducted from the total of the amounts due complainants. It is not suggested that the total for which these two were liable would exceed the amount they paid; nor that the appellants have suffered any substantial increase of their burden by reason of this action of the court. If any such there be, it is quite unimportant in amount, and in the absence of a specific objection at the time when the order of dismissal was made, should not be regarded as a ground for reversing the decree.

It is objected that John S. Bradford was dropped from the case. The decree finds that after the cause was submitted, and while under advisement, John S. Bradford died, and that his administrator had not been appointed; therefore it was ordered that as to said Bradford, the bill be dismissed.

This was necessary unless the court entered its decree *nunc pro tunc*, which it might have done, and perhaps would have done, if moved so to do by the complainants, or possi-

bly by the surviving defendants. The effect is the same as though Bradford had never been made a party defendant, and in this connection we may notice the objection that Nolte, Bateman, Johnson and other stockholders were not made defendants.

The question is, whether a number of depositors may jointly file a bill in chancery against a part only of the stockholders, or whether a decree against such stockholders will be fatally defective because of the non-joinder of the others.

We held in this case, when it was formerly in this court, that the administrator of a deceased stockholder might successfully plead the statute of limitations two years, as to the estate in his hands to be administered, and it is apparent there may be various circumstances, which would work great hardship to the depositor, if all the stockholders must be joined.

It has been held that a creditor of a corporation may, after judgment against it, and return of execution *nulla bona*, file a creditor's bill against one or more stockholders, delinquent for non-payment of stock subscriptions. It is not indispensable that all should be joined. Yet, in such case the delinquent stockholder may, by cross-bill, bring in other delinquent stockholders and enforce contribution. Clapp v. Peterson, 104 Ill. 26; Young v. Farwell, 139 Ill. 326; Hatch v. Dana, 101 U. S. 205; Cook on Stock & Stockholders, Sec. 206, and cases cited in note 3. The authorities are, however, not uniform.

We are inclined to hold that where, as in this case, the proceeding is merely to reach the statutory liability of stockholders, and where the complainants do not seek, and are not required to seek, relief by winding up the corporation, it is not necessary that all the stockholders should be made parties to the bill.

Those who are brought in may, perhaps, by cross-bill, and certainly by independent suit, reach their fellow-stockholders and enforce contribution, but the depositors should not be required to await the result of that controversy.

Various questions might arise between the stockholders, the adjustment whereof would bring delay, to which the depositors should not be subjected. The litigation might be prolonged, necessarily or collusively, by disputes, not concerning the creditors, until they, despairing of the end, would accept whatever they could get by compromise. The benefit of the statutory liability would thus be greatly impaired. As was said in Marsh v. Burroughs, cited in Hatch v. Dana, *supra*, referring to liability for unpaid subscriptions: "If a creditor were to be stayed until all such parties could be made to contribute their proportionate share of the liability, he might never get his money."

Rules of practice that might well apply to ordinary cases, requiring all persons interested to be brought in, should not apply in cases like this. All such rules are for the furtherance of justice, and as new cases and new conditions arise, should be so moulded or modified as to attain that end. Cook on Stock & Stockholders, Secs. 223 and 224.

It is also urged that the decree took no account of the assets of the corporation, assuming it had something valuable in that respect.

As was settled by the ruling of the Supreme Court in Queenan v. Palmer, 117 Ill. 619, the "losses," for which these stockholders are liable, are not to be ascertained by deducting the assets of the corporation from the claims of depositors, but the latter may seek from the stockholders full payment of whatever is due from the corporation.

The liability of the stockholder is regarded as primary, and he must make good the unpaid balance due the depositor, regardless of what might be realized from the corporate assets.

We find no substantial error in the record, and the decree will be affirmed.