# PEOPLE'S NATIONAL BANK OF CHARLOTTES-VILLE *v.* SAVILLE.

UNPAID STOCK SUBSCRIPTION, ENFORCEMENT OF; JOINDER OF ACTIONS.

Whether the remedy of creditors of an insolvent corporation to subject unpaid subscriptions of stockholders to the payment of their debts is at law or in equity, such remedy must be pursued individually against each subscriber in a separate suit, and no two or more subscribers may be joined together in one suit merely by reason of the fact that they are subscribers to the same capital stock of the same company. There is no such common interest, under such circumstances, as will be recognized as good ground for the prevention of a multiplicity of suits.

No. 1428.   Submitted February 10, 1905.   Decided March 7, 1905.

HEARING on an appeal by the complainants from a decree of the Supreme Court of the District of Columbia dismissing a bill by creditors of an insolvent corporation to enforce against numerous defendants alleged unpaid subscriptions to the capital stock of the corporation.                              *Affirmed.*

The COURT in the opinion stated the case as follows:

On June 18, 1891, there was organized, under the laws of the State of Virginia, a corporation designated as the Washington & Roanoke Land & Improvement Company, for the purpose of dealing in land in the city of Roanoke, in the State of Virginia, the principal office of which was to be in the District of Columbia, and of which the officers and a large number of the incorporators were residents of this District, although the certificate of incorporation declared that the principal office of the company should be located and its chief business transacted in the city of Roanoke. The capital stock of the company was to be not less than $175,000, nor more than $300,000, of the par

value of $100 a share, to be paid as the board of directors might prescribe.  How many shares of stock were taken does not appear; but it does appear that of the amount subscribed for there was payment made for one half.

The enterprise resulted in failure.    The company became embarrassed and insolvent, and judgments were rendered against it in the State of Virginia.   Four such judgments are held by the four appellants here, The People's National Bank of Charlottesville, Va., Everett Perkins, Receiver, etc., the Union Bank of Winchester, and William L. Williamson, aggregating upwards of $60,000 exclusive of interest, upon which writs of execution were issued, and returned unsatsified.

On January 26, 1893, proceedings in equity were instituted by the insolvent company in the circuit court for Roanoke, against certain of the appellants here and certain other persons, to vacate certain specified conveyances; and a cross bill was filed, and certain other proceedings were had, with the result that the judgments rendered against the company were adjudged to be valid and subsisting liabilities; and John M. White, one of the appellees here, was appointed receiver of the company and ordered to collect the unpaid subscriptions.   On October 5, 1900, the receiver reported that he was unable to collect any of the debts due to the company, and suggested that the creditors be decreed the amounts severally due to them, and receive separate executions therefor against the company.   The suggestion was adopted by the court, and separate judgments were rendered for each of the creditors; but the executions issued thereon were returned unsatisfied.

Thereupon, on March 25, 1901, the proceedings now before us for review were instituted in the supreme court of the District of Columbia by the filing of a bill in equity in the names of the four creditors, who are here the appellants, for the purpose of reaching the unpaid subscriptions of the stockholders. The suit was instituted against the company and the receiver and forty-nine enumerated stockholders, or representatives of deceased stockholders, whose unpaid subscriptions amounted on 1,329 shares to $66,450. Discovery was sought specially against

two of the corporators, and in a general way against all of them, of the books, papers, records, stock books, account books, and other papers of the company; and the chief prayer of the bill was that the unpaid subscriptions should be decreed to be a trust fund for the payment of the debts of the company, and "that the defendants, and each of them, or such of them as are solvent, be decreed to pay the debts and claims of the said complainants, said amount in no case to exceed the amount due by them and each of them upon their unpaid subscriptions."

The bill was met by four several demurrers, in one of which two defendants joined, in another thirteen defendants; and by a plea on the part of one defendant to the effect that he had never subscribed to the stock of the company, and was not the representative of any such subscriber. The death of two defendants was suggested; and thirty do not appear to have answered in any way, so far as the record before us shows. The company did not answer; but there was an answer by White, the receiver, as well as a cross bill, which was not a cross bill in fact, but an auxiliary bill in aid of the original bill, substantially setting up the same facts and praying the same relief.

The several demurrers interposed by the defendants differ somewhat on the grounds of objection which they suggest; but the chief grounds are that the controversy is one cognizable at common law, and not in equity; and that there is an improper joinder of several distinct causes of action against several defendants, and even against one and the same defendant.

The court below sustained the demurrers on this last ground, making no adjudication as to the others; and the complainants having elected to stand by their bill, it dismissed both the original bill and the cross bill. From the decree of dismissal the complainants have appealed.

*Mr. M. F. Mangan* and *Mr. D. W. Baker* (*Mr. L. E. McComas* being of counsel) for the appellants.

*Mr. John Ridout* and *Mr. Fulton Lewis* for the appellees.

Mr. Justice MORRIS delivered the opinion of the Court:

In sustaining the demurrers and dismissing the bill of complaint, the court below seems to have based its action exclusively on the authority of the decision of the Supreme Court of the United States in the case of *Hale* v. *Allinson,* 188 U. S. 56, 47 L. ed. 380, 23 Sup. Ct. Rep. 244; and we are of opinion that it was fully warranted in so doing. The principle of that case seems to us to be here directly applicable.

In that case a receiver appointed in the State of Minnesota for an insolvent corporation organized under the laws of that State instituted suit in equity in the circuit court of the United States for the eastern district of Pennsylvania, to enforce a statutory liability of stockholders of the corporation resident in Pennsylvania. It was held: (1) That no such suit could be maintained by a receiver outside of the State of his appointment, upon which proposition the rule laid down in the case of *Booth* v. *Clark,* 17 How. 322, 15 L. ed. 164, and numerous subsequent cases, was reaffirmed; and (2) that whatever remedy existed in favor of the complainant was at law, and not in equity, the jurisdiction of which had been invoked on the ground of avoiding a multiplicity of suits. It was also held that the suit could not be maintained as an ancillary or auxiliary to the proceedings in Minnesota, and in aid of their enforcement.

With the first proposition here enunciated we are probably not concerned in the present case. For, although a foreign receiver comes in and sues by way of cross bill, yet the main suit is not by him, but by creditors of the company, who may have an equity in their favor to reach the unpaid subscriptions as an equitable fund for the satisfaction of their debts. But the second proposition has a direct bearing on the case before us. Whether the suit is instituted by a foreign receiver or by creditors in their own right, the fact remains that there is an attempt here to combine forty-nine different, distinct, and separate suits in one. It is sought to enforce in one suit forty-nine distinct and independent contracts, which have no connection whatever with each other, further than that they are made with one and

the same person as the obligee. But the fact that an obligee. has forty-nine claims of the same nature and character against forty-nine different persons does not justify him in compelling those different persons to come into one suit, whether it be at common law or in equity, when there is nothing else in common between the parties. There is no common interest in such a case, such as the law would recognize as a good ground for the prevention of a multiplicity of suits. On the contrary, there is grave danger that such a combination of independent suits. in one proceeding may entail far greater vexation, expense, and annoyance than it could possibly prevent.

In the case of *Hale* v. *Allinson* the Supreme Court of the United States quoted with approval and emphatically indorsed the views expressed in the case by the lower court, which are to be found in 102 Fed. 790, and which are as follows:

"In this question the interest of each stockholder is separate and distinct. The bill asserts the conclusiveness of the Minnesota decree upon the defendants, so far as the necessity for the assessment and the amount charged against each stockholder are concerned. *Hancock Nat. Bank* v. *Farnum,* 176 U. S. 640, 44 L. ed. 619, 20 Sup. Ct. Rep. 506. Assuming that position to be sound (and if I do not so assume it, if these questions are still open for determination, so far as the Pennsylvania stockholders are to be affected, the bill must fail for want of necessary parties), it is clear that only two classes of questions remain to be decided: The first is whether a given stockholder was ever liable as such; and the second is whether, if he were originally liable, his liability has ceased, either in whole or in part.

"Manifestly, as it seems to me, the defendants have no common interest in these questions, or in the relief sought by the receiver against each defendant. The receiver's cause of action against each defendant is, no doubt, similar to his cause of action against every other; but this is only a part of the matter. The real issue, the actual dispute, can only be known after each defendant has set up his defense; and defenses may vary so widely that no two controversies may be exactly or even nearly alike. If, as is sure to happen, differing defenses are put in by

different defendants, the bill evidently becomes a single proceeding only in name.    In reality it is a congeries of suits with little relation to each other, except that there is a common plaintiff, who has similar claims against many persons.    But, as each of these persons became liable, if at all, by reason of a contract entered into by himself alone, with the making of which his codefendants had nothing whatever to do, so he continues to be liable, if at all, because he himself, and not they, have done nothing to discharge the liability.

"Suppose A to aver that his signature to the subscription list was a forgery; what connection has that averment with B's contention that his subscription was made by an agent who has exceeded his powers? or with C's defense, that his subscription was obtained by fraudulent representations? or with D's defense, that he has discharged his full liability by a voluntary payment to the receiver himself? or with E's defense, that he has paid to a creditor of the corporation a larger sum than is now demanded?    These are separate and individual defenses, having nothing in common; and upon each the defendant setting it up is entitled to a trial by jury, although it may be somewhat troublesome and expensive to award him his constitutional right. But even if the ground of diminished trouble and expense may sometimes be sufficient, I should still be much inclined to hesitate before I conceded the superiority of the equitable remedy in the present case.    Such a bill as is now before the court is certain to be the beginning of a long and expensive litigation. The hearings are sure to be protracted.    Several, perhaps many, counsel will no doubt be concerned, whose convenience must be consulted.    The testimony will soon grow to be voluminous. The expense of printing will be large.    The costs of witnesses will not in any degree be diminished; and, if some docket costs may be escaped, this is probably the only pecuniary advantage to be enjoyed by this one cumbersome bill over separate actions at law."

The Supreme Court has been at pains to reproduce this portion of the opinion of the circuit judge as fully embodying its own views upon the subject; and for that reason we can do no

better than reproduce it here.  It seems to us to be conclusive of the subject-matter of controversy in the present case.

It is sought to differentiate the present case from that of *Hale* v. *Allinson* on the ground that this is a suit by creditors, and not by a foreign receiver, and that creditors must necessarily go into a court of equity in order to reach unpaid subscriptions of stockholders.  Yet this does not reach the difficulty.  Conceding, without determining the question, that the remedy of creditors in such cases is in equity, and not at common law, yet no more in equity than at common law is it allowable to join distinct and independent causes of action against different persons in no way connected with each other.  The proposition to reach unpaid subscriptions for the payment of debts of an insolvent company is in no way different from an attempt to reach any other equitable assets.

If a judgment creditor is compelled to go into equity to reach equitable assets of his debtor, and upon one transaction A is alleged to hold some such assets, and upon another and wholly distinct transaction B is alleged to hold similar assets, we know of no rule of equity or of propriety that would justify the joinder of A and B and of the two transactions in one suit.  A and B are entitled to stand alone, each for himself, and not to be involved in the litigation of each other.  This would seem to be eminently reasonable; and this is what we understand to have been determined in the case of *Hale* v. *Allinson.*

It is claimed that there was a different ruling in the case of *Hatch* v. *Dana,* 101 U. S. 205, 25 L. ed. 885.  But it is conceded on behalf of the appellants that the case of *Hatch* v. *Dana* is not in conflict with the later case, and we are, therefore, not called upon to distinguish between the two.  Moreover, the point made in the case of *Hale* v. *Allinson* does not seem to have been made in the case of *Hatch* v. *Dana.*  In fact, in the case of *Hatch* v. *Dana* the contention was directly the reverse,—that is, that all the stockholders should have been made defendants to the suit; and this contention the court overruled.  The court there said:

"The liability of a subscriber for the capital stock of a com-

pany is several, and not joint. By his subscription each becomes a several debtor to the company, as much so as if he had given his promissory note for the amount of his subscription. At law, certainly, his subscription may be enforced against him without joinder of other subscribers; and in equity his liability does not cease to be several. A creditor's bill merely subrogates the creditor to the place of the debtor, and garnishes the debt due to the indebted corporation. It does not change the character of the debt attached or garnished." *Hatch* v. *Dana,* 101 U. S. 205–210, 25 L. ed. 885, 886.

Of course, if a liability is several, and neither joint nor joint and several, it is not competent for him who would enforce it, whether it be the original creditor, or a representative of such original creditor, or any person who becomes subrogated by operation of law to the place of such original creditor, to bring it into what might possibly be called hotchpot with other similar liabilites of other persons. Whether the remedy is at law or in equity, it is to be pursued individually against each subscriber in separate suits; and no two or more subscribers are to be joined together in one suit merely by reason of the fact that they are subscribers to the same capital stock of the same company.

Such being, as we are advised, the rule laid down by the Supreme Court of the United States, we must hold that the court below was right in its application. The decree appealed from will be affirmed, with costs. And it is so ordered.

*Affirmed.*

An appeal to the Supreme Court of the United States was prayed by the appellants, and allowed March 14, 1905.