McWHIRTER v. FIRST STATE BANK OF AMARILLO. (No. 895.) *

(Court of Civil Appeals of Texas. Amarillo. Jan. 12, 1916. Rehearing Denied Feb. 2, 1916.)

1. BANKS AND BANKING &wkey;77—INSOLVENCY —ACTION—PARTIES.

Under authority of the commissioner of banking, an action to realize on assets may be maintained in the name of a bank in the hands of a special agent appointed by such commissioner to wind up its affairs.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 165–176½; Dec. Dig. &wkey;77.]

2. ABATEMENT AND REVIVAL &wkey;45 — INSOLVENT BANK — ACTION BY AGENT — ABATEMENT.

An action brought by authority of the commissioner of banking in the name of a bank in the hands of a special agent appointed by such commissioner to wind up its affairs will not abate on change of commissioner.

[Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 226–236; Dec. Dig. &wkey;45.]

3. BANKS AND BANKING &wkey;39—INSOLVENCY —ACTION ON SUBSCRIPTION—DEFENSES.

The fact that, as between a bank and a subscriber for stock thereof, the subscription was on credit, with an agreement that it should be paid from dividends, is not available as a defense where he is sued on his subscription after the bank has defaulted and is in the hands of a special agent appointed by the commissioner of banking to wind up its affairs, and the action is for the benefit of creditors.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 44–48; Dec. Dig. &wkey; 39.]

4. CORPORATIONS &wkey;90 — INSOLVENCY — ACTION ON SUBSCRIPTION—DEFENSES.

One who for years went along as a stockholder of a corporation receiving dividends, being sued for the benefit of its creditors after it became insolvent, is estopped to assert that he is not a stockholder because the stock was issued for his note in violation of Const. art. 12, § 6, requiring it to be issued for money paid.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 245, 383–419; Dec. Dig. &wkey;90.]

Appeal from District Court, Potter County; Hugh L. Umphres, Judge.

Action by the First National Bank of Amarillo against H. K. McWhirter. Judgment for plaintiff, and defendant appeals. Affirmed.

Madden, Trulove, Ryburn & Pipkin and Kimbrough, Underwood & Jackson, all of Amarillo, for appellant. Turner & Rollins, of Amarillo, for appellee.

---

HENDRICKS, J. The appellee sued the appellant upon a note for the principal sum of $1,000, dated October 3, 1912, payable to the First State Bank of Amarillo, due April 1, 1913, with interest from maturity at the rate of 8 per cent. per annum, and providing for the usual 10 per cent. attorney's fees—the petition acknowledging certain credits unnecessary to specify.

The plaintiff, the First State Bank of Amarillo, alleged that it was in the hands of one J. O. Roots, special agent under the appointment of W. W. Collier, commissioner of insurance and banking of the state of Texas; the appointment of Roots having been made after said bank had become insolvent; and further averred that Roots, as such special agent, was winding up the affairs of the bank and collecting its assets for the benefit of its creditors and stockholders, under the direction of Collier as commissioner of insurance and banking, and that said suit was instituted under the authority of both Roots and Collier.

[1] Appellant's first assignment of error is that:

"The court erred in overruling defendant's plea in abatement, * * * because plaintiff's petition fails to show any authority in the said W. W. Collier and J. O. Roots, to maintain the suit in the name of the plaintiff, First State Bank, and said petition shows that said First State Bank is incompetent to maintain said suit in its own name."

The Supreme Court of the United States, in the case of Bank of the Metropolis v. Kennedy, 17 Wall. 19, 21 L. Ed. 555, referring to previous authorities, decided by the same court, said:

"We have already decided in the case of this very receiver that he may bring suit in his own name or use the name of the association. Kennedy v. Gibson, 8 Wall. (75 U. S.) 506 [19 L. Ed. 476]. The subject was also lately discussed in the case of Bank of Bethel v. Pahquioque Bank, 14 Wall. (81 U. S.) 383 [20 L. Ed. 840], and the same views were held; the action in that case being brought against the insolvent bank."

Appellant admits, of course, the entitative existence of the corporation, whose affairs are in the hands of the government, except in so far as its duties and responsibilities are suspended by the possession, under the law by the state officers. The point is that the deprivation of dominion by the board of directors over the assets of the corporation is such that the corporation itself could not sue to realize upon the assets, and that the power could not be conferred upon it to sue for the benefit of the liquidator, or Collier, the commissioner.

The authorities, in similar matters, are against the contention. If a receiver could use the name of a national bank in bringing a suit, we can see no objection to the use of the name of a state bank by the commissioner for the same purpose.

[2] The plea in abatement further asserted that subsequent to the last continuance of the case, Collier, as commissioner, was out of office and had been succeeded by one Patterson. Appellee replies that the plea in abatement, suggesting the matters indicated, comes too late.

We think, however, as a short cut to the whole matter, that the commissioner of banking had the right to use the name of the First State Bank in instituting and maintaining a suit for the recovery of its assets; that when the power is conferred and the suit is instituted, because the particular officer of government, who authorized the suit had retired and his successor had been appointed, this condition of itself would not operate as an abatement of the suit. The authority had gone forth, and we are not referred to any case, nor can we find any, that because of a change of officers such power would be presumptively revoked. Neither the case of Warner Valley Stock Co. v. Hoke Smith, Secretary of the Interior, 165 U. S. 28, 17 Sup. Ct. 225, 41 L. Ed. 621, nor the principles therein enunciated, apply to this condition.

The second assignment raises the same question as to the abatement of the suit produced by the retirement of Collier, and the succession of Patterson, as comptroller, as raised by the fourth proposition under the first assignment. Both assignments are overruled.

[3, 4] Appellant alleged in his answer that he originally subscribed for certain stock in the First State Bank, upon an understanding with one Le Master that appellant and one Holbrook, "could acquire the stock altogether on credit, and that the plaintiff would so handle their stock and note as to make the stock realize sufficient revenues from dividends and the increase in value to pay off the note which appellant and Holbrook would be asked to give." (The quotation is from the brief.) He also alleged that when the transaction was thereafter consummated, and the stock was delivered to him, it was redelivered upon request as collateral security for the note, and this was done with the knowledge of the officers of the bank of the agreement mentioned. His reconvention is that the promoters first, and the officers thereafter (on account of ratification), having made said agreement, it is one of indemnity to the extent that he would not be bound upon the original note, and was not obligated to pay any successive renewal of the first note executed on account of the violation of the bank of said agreement. The trial court sustained an exception to this agreement.

There is force in appellee's position that the allegations merely express a "puffing" transaction, or one of "trade talk," which, with its indefiniteness, is unenforceable. It is admitted by appellant in the pleadings that the assets of the particular bank are in the hands of Roots as special agent, under appointment by Collier, as commissioner. Under the law, the commissioner takes charge of a delinquent bank on account of default in the payment of its debts. It is inferable

from the testimony in this case that Roots, the special agent, took charge of this bank on account of its failure.

When the government takes charge of a defaulting bank and is administering its affairs, for the purposes indicated by statute, we think the question of solvency, or technical insolvency, of said bank, is a foreclosed proposition. If the bank were not insolvent, according to the ordinary acceptation of the term, however, the government having suspended its operations, its action for the purposes of this suit, as to that question, is final. We take it that the use of the bank's name as nominal plaintiff, is not the act of the bank, but the act of the government by virtue of the power vested in its officers under the law in assuming charge of its assets. The action of the commissioner, in charge of a state bank, in making an assessment against the stockholders under the provisions of our statute, is determinative, the same as the assessment of a receiver under the provisions of the National Bank Act. Collier v. Smith, 169 S. W. 1108, and authorities cited. We believe the same principle would apply to that question in the condition of this record. Hence, reverting to the question of the alleged indemnity, as pleaded by the defendant, we do not think that the same is available in this proceeding. The fund to be derived from a stockholder, in the present condition of this corporation, should be regarded as a trust fund to be devoted to all the creditors of the company. Sawyer v. Hoag, 17 Wall. 610, 21 L. Ed. 735; Burleson v. Davis, 141 S. W. 561. It is true that the cases, in regarding such assets as a trust fund, for the benefit of creditors, generally refer to actual insolvency of corporations whose affairs are before the courts or in the hands of an assignee for administration. As to this corporation, however, the statutes of this state have substituted a condition, whether actual insolvency or not, calling for the interposition of the officers of government for the administration of the assets of a defaulting corporation, primarily for the benefit of creditors. We think the same rule should prevail as applicable to this record.

Chief Justice James, of the San Antonio district, held, in the case of Roach v. Burgess, 62 S. W. 804, that a stockholder of a college corporation, sued after the insolvency of said incorporation for tuition owing the college, could not show a parol agreement contemporaneous with a stock subscription that the stock should be received in payment of said tuition.

Morawetz on Private Corporations, vol. 2, § 821, says:

"In equity  *  * . *  the shareholders of an insolvent corporation are held to be unconditionally liable to its creditors to contribute the amount of capital subscribed by them, although their subscriptions were conditional, as between themselves and the company, upon a regular call or assessment by the board of directors"—citing the case of Hatch v. Dana, 101 U. S. 205, 214, 25 L. Ed. 885.

The court submitted an issue to the jury whether or not the appellee originally issued its corporate stock to appellant for and in consideration of the note, to which the jury answered that the same was not so issued. Appellant questions this submission, and the jury's answer.

It is argued by appellee that the original note, executed by McWhirter, the appellant herein, was one made payable to Holbrook and indorsed in blank by the latter; that the officers of the appellee bank, as the agent of McWhirter and Holbrook, discounted the note to the Dallas bank, and the proceeds of that negotiation constituted a payment of the stock as between the bank and McWhirter; that the note was thereafter transferred by the Dallas bank to the Amarillo bank for a valuable consideration, and that this note, payable to Holbrook, was taken up by another note executed by McWhirter and Holbrook, direct to the First State Bank, and constituted a loan; that the present note for $1,000 sued upon, after Holbrook had been eliminated from the transaction, is a renewal of the note payable direct to the Amarillo Bank as such loan. Hence the note sued upon, it is asserted, is not the payment of the stock; in a sense it had already been paid for.

Appellant contends that said renewal represents the original note; that said original note in reality was given for the stock which was delivered to him, and then redelivered to the bank as collateral security for the indebtedness; that the transaction by the First State Bank with the Dallas bank is a subterfuge; that the latter bank paid nothing for the original note, and when surrendered, and transferred by it to the Amarillo bank, just a few days after it had been delivered to the Dallas bank, no consideration likewise passed, but that the same was a juggling of debits and credits between the two banks; that stripped of circumlocution, the present note, in reality, represents the original note; that the stock originally was delivered to Mr. McWhirter, as it was recognized by the bank as having been "issued" by using it as collateral security, and hence such a transaction is in violation of the Constitution, for the reason that the stock was not issued for "money paid." Section 6, article 12, state Constitution.

The case of Allen v. Edwards, 93 Miss. 719, 47 South. 382, presents this condition. Section 850 of the Annotated Code of 1892, of Mississippi, prescribes that:

"A note, obligation, or security of any kind, given or transferred by one subscriber for stock in any corporation, shall not be considered taken or held as payment of any part of the capital stock of the company."

One Edwards was director and stockholder of a corporation, and continued to be director and stockholder of the institution throughout the period of the prosperity of the bank, receiving dividends. Edwards had transferred a note of another for six shares of stock in the bank, for which Allen had be-

come receiver, apparently in the face of the provision quoted. The receiver of the bank, after its insolvency, collected the note, and Edwards' contention was that this particular money should not have been applied on the subscription to this stock, but should have been credited to him individually, and allowed as an offset to the note sued upon by the receiver. The Supreme Court of Mississippi said:

"That section [850, supra] has no application in the solution of this case. It simply provides that there can be no valid subscription to stock without the payment in cash therefor. The rule declared by that section was intended to secure the corporation and its creditors and depositors, and not to benefit a defaulting subscriber. * * * The stock subscription of the bank was the means of the company, on the faith of which credit was given to it, and every subscriber was liable for debts contracted during his ownership of stock, and for a year after he had transferred it to the amount of his subscription. * * * The purpose of these statutes and section 850 is perfectly plain. They were all enacted for the purpose of protecting the depositors and creditors of a bank. They were not passed with any view to benefit a defaulting stockholder. * * * Edwards held himself out by all his conduct and dealings with the bank * * * as a stockholder of these six shares, * * * and, having so held himself out towards depositors and creditors, as a stockholder * * * the law will take him at his word and deal with him as if he in fact were a stockholder, whether he was or not. In other words, he is estopped to deny as against creditors, that he was a stockholder as to these six shares, by his own course of dealing in the matter."

As applied to an insolvent corporation, we think the rule is sound.

The case of Sawyer v. Hoag, supra, by the United States Supreme Court, was one where the assignee in bankruptcy was suing a stockholder upon a note, which, though regarded as a loan between the insurance company and the stockholder, the Supreme Court of the United States said, that:

"The debt which the appellant owed for his stock was a trust fund devoted to the payment of all the creditors of the company," and this fund could not be appropriated by the debtor to the exclusive payment of his own claim, in an action of set-off.

In that case the set-off, it is true, was one acquired after insolvency, and the question of the indebtedness being void, on account of some prohibitory statute or constitutional enactment, was not involved.

This record shows that McWhirter went along for several years as a stockholder, receiving and acknowledging dividends paid by the bank, as having been earned upon the stock. The bank, as plaintiff in this suit, is a nominal party for the benefit of the officers of the state for the creditors and other stockholders. The bank has defaulted and the state is attempting to realize upon its assets for the purpose of executing the trust for the benefit of those entitled to the fund. This is not, in reality, litigation between the bank and McWhirter, with the latter asserting that his note is void because in violation of the Constitution. It is an attempt upon the part of McWhirter, when pursued by the parties in charge of the assets, to invoke the Constitution, and abstract a fund for the benefit of the creditors and other stockholders after the crash has come. If courts permitted indemnities to be pleaded by stockholders, when corporations have become insolvent, conditions are conceivable where the creditors of a defaulting corporation might look into a vacuum.

We also think McWhirter is estopped to deny that he is a stockholder in the condition of the record. This discussion disposes of all other assignments.

Believing that the court rendered the proper judgment, it is affirmed.